35 F.3d 569
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Samuel HATCH and James Cooper, Defendants-Appellants.
 Nos. 93-3808, 93-3888.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1994.
Decided Aug. 17, 1994.
 
 Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 I. BACKGROUND
 
 1
 Samuel Hatch and James Cooper appeal their convictions for possession with intent to distribute five kilograms of cocaine, a violation of 21 U.S.C. Sec. 841(a)(1), on two grounds. First, Hatch and Cooper maintain that the district court erred by ruling that the investigative stop of the pick-up truck they used to transport the cocaine was proper under Terry v. Ohio, 392 U.S. 1 (1968). Secondly, appellants challenge the district court's ruling that Hatch's consent to search the truck after it was stopped was freely and voluntarily given. We affirm their convictions.
 
 II. SUMMARY OF FACTS
 
 2
 This case began with an anonymous telephone tip to the Fort Wayne, Indiana FBI office on the morning of April 20, 1993. Agent Kenneth Ivan was informed by the tipster that two black males, Sam Hatch and James Cooper, had left the Miami, Florida area at about 6:30 p.m. on April 19, 1993 en route to Fort Wayne, Indiana with approximately five kilograms of cocaine. The caller further indicated that:
 
 
 3
 (1) Hatch and Cooper were driving an older model white and gray Ford pick-up truck with wide tires and tinted windshield;
 
 
 4
 (2) The pick-up's Florida license number was LPS 71K;
 
 
 5
 (3) the cocaine would be contained in the truck's gas tank; and
 
 
 6
 (4) Hatch and Cooper would be arriving on U.S. Highway 33 into Fort Wayne, and the cocaine would be delivered to an unspecified house just off Highway 33.
 
 
 7
 Agent Ivan forwarded this information to FBI Special Agent McGauley who contacted Indiana State Trooper Eidam of the Allen County (Indiana) Task Force. Officer Haxby of the Task Force used a computer simulator to estimate the driving time from Miami to Fort Wayne at 22-24 hours. The Task Force gathered on Route 33 at the appropriate time to intercept the pick-up. At approximately 5:40 p.m. on April 20, 1993, a pick-up matching all the above information was spotted on Route 33, and Officer Haxby, who had prior dealings with Hatch, visually identified him through the windshield of the passing truck. A marked Indiana State Police squad car pulled the truck onto the road's shoulder using its flashing lights, at which time another marked squad and two other unmarked law enforcement vehicles surrounded the pick-up.
 
 
 8
 Hatch promptly left his truck and walked toward Trooper Knox, who instructed him to remain in his vehicle. When Hatch continued coming toward Trooper Knox, the Trooper and the other officers drew their weapons. Hatch then returned to his vehicle and placed his hands on the dashboard as instructed, and the officers returned their weapons to their holsters or vehicles. The officer's weapons were trained on Hatch for a very short length of time.
 
 
 9
 Hatch and Cooper exited the truck individually and were frisked for weapons--none existed. Cooper was instructed to stand at the rear of the pick-up while Hatch went into a police car and was informed of his rights. Agents McGauley and Kell approached Cooper, with McGauley identifying himself by displaying his FBI badge. Cooper was asked to accompany the Agents back to the FBI car. It was a windy and brisk evening and the Agents testified that they wanted to question the suspects out of the cold. McGauley testified that he absolutely told Cooper that he was not under arrest and that he was free to leave, but he was advised of his rights. After a few minutes of questioning, Cooper voluntarily told the Agents that there was "two kilos" (of cocaine) located behind the drivers seat of the truck.
 
 
 10
 Hatch was approached with this information and denied it, but orally agreed to a search of the truck. Agent McGauley asked Hatch if he would sign a consent form and Hatch agreed, but told McGauley he had a limited (third grade) education and could not read or write very well. McGauley read the form to Hatch, pausing after each line to see if Hatch understood. Hatch agreed he understood and signed the consent form (misspelling his name). The truck was then searched and a suitcase was discovered containing two wrapped packages, later determined to contain cocaine and $23,000 in cash. Hatch and Cooper were arrested. Approximately ten minutes elapsed between the initial stop and Hatch's signing the consent form.
 
 
 11
 The truck was then inventory-searched using a drug locating dog, who alerted under the rear of the truck by the gas tank. The next day the gas tank was disassembled and searched pursuant to a warrant and four additional packages of cocaine were found in a concealed compartment. All together, five kilograms of cocaine were seized.
 
 III. ANALYSIS
 A. Standard of Review
 
 12
 This court reviews denials of motions to suppress under the clearly erroneous standard. United States v. Eddy, 8 F.3d 577, 580 (7th Cir.), cert. denied, 1994 LEXIS 3460 (May 2, 1994); United States v. Evans, 994 F.2d 317 (7th Cir.1993). The test for determining whether there was a basis for an investigative detention is whether there was a reasonable, articulable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1 (1968). We review the trial court's decision as to the legal basis for a Terry stop under a clear error analysis. See United States v. Ornelas-Ledesma, 16 F.3d 714, 719 (7th Cir.1994).
 
 
 13
 B. The Uncorroborated Anonymous Tip As The Basis For The Stop
 
 
 14
 An uncorroborated anonymous tip, even when it comes from law enforcement authorities, does not by itself justify a stop. United States v. Hensley, 469 U.S. 221, 232 (1985). Reasonable suspicion is determined by the totality of the circumstances. Alabama v. White, 496 U.S. 325, 329-330 (1990). As the Court further observed, an anonymous tip coupled with independent corroboration by the police of significant aspects of the informer's predictions may impart sufficient indicia of reliability to justify an investigatory stop of a suspect's car. White, 496 U.S. at 322.
 
 
 15
 A highly-detailed anonymous tip that was corroborated by independent police work is enough to establish probable cause to search under the totality of the circumstances standard enunciated in Illinois v. Gates, 462 U.S. 213 (1983). Under the facts of this case our analysis need go no further. The officers verified every detail of the informant's assertions prior to the investigative stop, including the vehicle's color, Florida license plate number, tinted windows, wide tires, and the number and the race of occupants. Officer Haxby visually identified Hatch as the driver, and the vehicle had arrived at the predicted point at the proper time.
 
 
 16
 Although we agree with the district court that the officers had a particularized and objective basis to make an proper investigatory stop under Terry, we further believe that probable cause to stop the truck existed under the Gates analysis.
 
 
 17
 C. The Impact Of The Officers Drawing Their Weapons
 
 
 18
 Judge Lee went to considerable length to analyze the question whether the investigative stop became an arrest by the officer's show of force. The district court found that it was not unreasonable for the officers to have drawn their weapons after Hatch did not obey Officer Knox's verbal warning to remain in his vehicle. The defendants, suspected drug traffickers, were believed to be delivering five kilograms of cocaine from Miami to Fort Wayne when they were stopped just a few miles from their destination. After Hatch returned to the truck, the officers promptly put their weapons away. The mere use or display of force in making a stop does not necessarily transform a stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety. United States v. Tilmon, 19 F.3d 1221, 1226 (7th Cir.1994).
 
 
 19
 The district court properly held that the officers' limited use of their weapons was a reasonable precaution in the context of the investigatory stop. The actions of the officers fell well within the purview of United States v. Hensley, 469 U.S. 221 (1985) and United States v. Ocampo, 890 F.2d 1363, 1369 (7th Cir.1989).
 
 D. The Consent To Search
 
 20
 Appellants raise the issue of whether Hatch freely and voluntarily gave consent to search the vehicle. This court reviews such trial court determinations under a clearly erroneous standard. United States v. Kozinski, 16 F.3d 795, 810 (7th Cir.1994); United States v. Dickerson, 975 F.2d 1245, 1249 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1316, 122 L.Ed.2d 703 (1993). We defer to the district court's credibility determinations. United States v. Johnson, 910 F.2d 1506, 1508 (7th Cir.1990), cert denied, 498 U.S. 1051 (1991). Therefore, this court will only reverse the district court's ruling if its decision that the consent was voluntary was clearly erroneous. Kozinski at 810.
 
 
 21
 When determining whether consent to search was voluntarily given, the district court must look to the "totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); Kozinski at 810. The totality of the circumstances included an analysis of the defendant's age, education and intelligence, the advisement of his rights, how long he was detained prior to his consent, physical coercion and whether he was in custody. Kozinski at 810; United States v. Rojas, 783 F.2d 105, 109 (7th Cir.), cert denied, 479 U.S. 856 (1986). Here, Hatch argues that his consent to search was clearly the product of his custodial setting and coercive police conduct.
 
 
 22
 Under the facts of the present case the voluntariness of Hatch's consent is of no consequence. The district court heard the testimony of Cooper and the agents, and concluded that Cooper voluntarily admitted to the agents that there were "two kilos" (of cocaine) in a suitcase behind the driver's seat in Hatch's truck. After Cooper's admission, probable cause existed for a warrantless search of the legitimately-stopped vehicle and any suitcase found within it; at this point Hatch's consent was unnecessary. United States v. Ross, 456 U.S. 798 (1982). We need not reach the issue of whether the search was voluntary as the consent form signed by Hatch and his understanding of it are rendered irrelevant under the Court's analysis in Ross.
 
 IV. CONCLUSION
 
 23
 For the foregoing reasons, the convictions of Samuel Hatch and James Cooper are affirmed.