**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Walter ROJAS, Defendant-Appellant.**

**No. 85–1955.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1986.

Decided Feb. 13, 1986.

Rehearing Denied April 18, 1986.

Alan T. Karten, Coral Gables, Fla., for defendant-appellant.

Christina McKee, Asst. U.S. Atty., Ft. Wayne, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

BAUER, Circuit Judge.

Defendant, Walter Rojas, appeals from his criminal conviction below. Rojas was convicted on one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and on three counts of using a telephone to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b). Rojas alleges that the Speedy Trial Act was violated when he was brought to trial less than thirty days after the government of its own volition returned a superceding indictment against him. Rojas also alleges that the trial court erred when it admitted evidence obtained in a consent search of his apartment because that consent was not freely and voluntarily given. We disagree with Rojas' arguments and affirm the judgment of the trial court, 607 F.Supp. 1439.

I.

On December 6, 1984, a grand jury returned a thirteen count indictment against Rojas and several co-defendants. The indictment charged Rojas with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and three counts of using a telephone to facilitate the commission of a felony in violation of 21 U.S.C. § 843(b). Rojas was arraigned on December 19, 1984. He was represented at the arraignment by counsel, who first entered his appearance on that date. On January 24, 1985, Rojas moved to dismiss the three telephone counts on the ground that they failed to allege a specific felony. On February 8, 1985, the trial court granted Rojas' motion to dismiss the three counts because

those counts failed to name the controlled substance involved in the felony facilitated by telephone. Following dismissal of these three counts, the government of its own volition sought a superceding indictment. On February 25, 1985, the grand jury returned a superceding indictment. This indictment was also in thirteen counts and was in every respect identical to the December 6, 1984 indictment except that the three telephone counts against Rojas now specifically alleged that the controlled substance involved was cocaine. Rojas' trial began on March 12, 1985 and concluded on March 15, 1985. Rojas was found guilty on all four counts. He received a fifteen year sentence on the conspiracy count, concurrent four year sentences on the telephone counts, and a $340,000 fine. This appeal followed.

## II.

Rojas alleges that the government's failure to allow thirty days between the time that the superceding indictment was returned and the date of trial was a violation of the Speedy Trial Act. We disagree. The Speedy Trial Act guarantees a defendant thirty days between the time his counsel first appears and trial. 18 U.S.C. § 3161(c)(2). If an entire indictment is dismissed upon motion of the defendant and the defendant is reindicted on the same offense, the Act provides that the thirty day clock begins to run anew. 18 U.S.C. § 3161(d)(1). If only a few counts are dismissed on defendant's motion, however, as in this case, and the government returns a superceding indictment of its own volition, the defendant is not entitled to a new thirty day trial preparation period. *United States v. Rojas-Contreras*, —— U.S. ——, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985). Thus, Rojas was not entitled to a new thirty day period after the superceding indictment was returned. He was only entitled to what he received, thirty days between the time his counsel first appeared, December 19, 1984, and trial, March 12, 1985.

## III.

Rojas also alleges that he did not freely and voluntarily consent to a search of his apartment and thus admission at trial of evidence obtained in that search was reversible error. Although we find this issue more troublesome, we disagree.

Whether a search is undertaken with the free and voluntary consent of the defendant is a determination that must be made by examining the totality of circumstances in each individual case. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The determination is a factual one that cannot be overturned on review unless clearly erroneous. *United States v. Borys*, 766 F.2d 304, 314 (7th Cir.1985); *United States v. Morgan*, 725 F.2d 56, 58 (7th Cir.1984). We thus review the details surrounding this search.

Rojas is a Colombian national. He was born in Colombia but lived in the United States for two years before the search. At the time of the search he was 26 years old. He graduated from high school in Colombia and also completed four years of electrical engineering school and one year of law school there. Rojas spoke some English.

The search of Rojas' apartment took place in conjunction with Rojas' arrest. Seven law enforcement officials from various state and federal agencies (including the FBI, the Drug Enforcement Administration, the Allen County, Indiana, Sheriff's Office, and the Indiana State Police Department) arrived at Rojas' apartment at 8:25 P.M. to execute a valid warrant for Rjoas' arrest. Special Agent Kuba of the FBI knocked on the door, and Rojas opened it. Kuba told Rojas in English that Kuba was an FBI agent with a warrant for Rojas' arrest for distribution of cocaine. Kuba asked Rojas if he was Rojas. When Rojas replied in the affirmative, Kuba ordered him, again in English, to place his hands on the wall. Kuba entered the apartment followed by the other agents. Rojas was then searched and handcuffed behind his back. Kuba asked Rojas if he understood Eng-

lish, and Rojas replied that he did. Kuba then read Rojas the arrest warrant.

Kuba made a brief survey of the apartment to locate any other persons and make sure the apartment was safe. He found two friends of Rojas, Ms. Valencia and Ms. Galiano. Special Agent Ava Cooper of the Drug Enforcement Administration told the women not to talk, did a pat-down search of them, and questioned them in Spanish about their immigration status. Ms. Valencia produced a visa. Ms. Galiano had no identification and indicated that her visa had expired. Cooper told Ms. Galiano that if she could not provide proof of her status, she would be detained at the Allen County jail to await immigration officials. Special Agent Cooper then obtained consent from Ms. Valencia to search what apparently was her bedroom of the apartment. Rojas testified that he overheard these conversations between Cooper and the two women.

After Rojas was handcuffed, he was taken into the bathroom, which was approximately 5½ feet wide by 8½ feet long, by Kuba and Special Agent Adams of the Drug Enforcement Administration. Kuba told Rojas in English that he wanted to search the apartment for narcotics and papers relating to the charge of distributing cocaine. He told Rojas that anything they found might be used against him as evidence and told him that he had the right to refuse to consent to the search. Rojas answered in Spanish that he understood and would allow the search. Adams then asked Rojas in English if he understood what Kuba had said, and Rojas answered in English: "No problem. I understand." Kuba then told the other agents in the apartment to begin searching.

Cooper then entered the bathroom with consent to search forms written in Spanish. She asked Rojas in Spanish if he understood what Kuba had said. Rojas replied that he understood. She asked Rojas, again in Spanish, if he read Spanish, to which he replied that he did. Cooper then gave Rojas the consent form to read and sign, and did not read it to him herself. The form indicated that Rojas had the right to refuse the search and to refuse to sign. It was approximately 8:30 when Rojas was given the form.

Rojas' handcuffs were removed, and he was taken into the living room where he signed the consent form at approximately 8:35. Rojas later testified that he knew that he was signing a consent to search form.

Rojas was then informed of his Miranda rights. He thereupon refused to sign an Interrogation Advice of Rights form written in Spanish and read to him in Spanish. He also exercised his right to demand an attorney.

The search of the apartment lasted approximately fifteen minutes. A number of books and records along with $45,000 cash were found and seized.

Throughout the arrest, the request for consent to search, and the search, there was no unnecessary display of weapons. Kuba entered the apartment with gun drawn and pointed upward. He holstered his gun as soon as Rojas was searched and he had completed the brief survey of the apartment. His weapon was thus displayed for about fifteen to twenty seconds. Officer George Colby of the Allen County Police Department entered immediately after Kuba, also with gun drawn. He holstered it seconds after entering the apartment. Adams also entered with gun drawn, but holstered it after Rojas was searched and he had checked the kitchen for other persons. His weapon was thus displayed for approximately one minute. Cooper also entered the apartment with gun drawn, but holstered it immediately upon entry. Apparently no weapons were drawn at any other time by anyone. No guns were ever pointed at Rojas or the two women.

All officers who testified indicated that the situation and all persons were at all times calm and controlled. They testified that there were no threats or raised voices, and that Rojas and both women seemed calm and relaxed.

Rojas agreed that there were no specific threats and that the situation was calm. He testified, however, that he was very scared, that he was visibly shaking, that he feared for the safety of the two women, that he neither concentrated on nor understood what Kuba had said to him in the bathroom, and that he thought the agents had rights similar to the rights of Colombian police to search anywhere regardless of consent or to coerce him into consenting.

We look to many factors when determining whether a consent to search is freely and voluntarily given. We look to the age, *Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), education, *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), and apparent intelligence of the defendant. *Fikes v. Alabama*, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). We look to whether the defendant was advised of his constitutional rights, *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1965), the length of time that the defendant was detained before consent was obtained, *Chambers v. Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940), the repeated and prolonged nature of the request for consent, *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), and the use of physical coercion such as the deprivation of food or sleep. *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961). We also look to whether the defendant was in police custody when the consent was obtained, whether the request for consent was "subtly coercive" in form, and whether the defendant could be expected to be in a "vulnerable subjective state." *Schneckloth v. Bustamonte*, 412 U.S. 218, 229, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Rojas also suggests that we look to six factors outlined in LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 8.2, pp. 642–44, to determine whether consent obtained incident to an arrest is voluntarily given: (1) whether the arrest occurred late at night, (2) whether the arrest was made by a display of weaponry, (3) whether the arrest was made by forcible entry, (4) whether the arrestee was placed in cuffs or otherwise kept in close restraint, (5) whether in a search incident to arrest the police gained custody of a key or similar means of entry to the place desired to be searched, and (6) whether custody was used as leverage in the sense that the arrestee was told he would be released if he gave consent.

█ An analysis of this case in light of these factors reveals that the great majority of the factors point to the conclusion that Rojas' consent was freely and voluntarily given. Rojas is of sufficient age, education, and apparent intelligence to knowingly give voluntary consent. He was advised of his right to refuse to consent, he was detained a mere two minutes before he gave consent, there was no prolonged or repeated interrogation before the consent, and there was no physical coercion. The arrest did not occur late at night and was not made by forcible entry. No key or similar item was found in a search incident to arrest, and custody was not used as leverage to obtain Rojas' consent.

Several important factors, however, keep us from jumping confidently to the conclusion that Rojas' consent was voluntarily given. Rojas was in police custody when the consent was obtained, the agents sequestered Rojas in the smallest room of the apartment before attempting to obtain his consent (which could be "subtly coercive"), Rojas had at least a slight language barrier and perhaps had preconceived notions about police tactics (both of which may have contributed to a "vulnerable subjective state"), and Rojas was handcuffed behind his back while the agents attempted to obtain his consent.

The district court specifically considered each of these factors that could be interpreted to indicate that Rojas' consent was not voluntarily given. The court found that although there was a "substantial presence of law enforcement officers," "[n]o intimidation, force or threats were used by the Agents against the defendant or other persons in the apartment." Tr. of Suppression Hearing, Mar. 7, 1985, p. 151. The court took account of "defendant's

background and native tongue" and the fact that Rojas was "sequestered with Agents" before consent was obtained. *Id.*

Because the district court correctly considered and weighed all of these factors, we are reluctant to overturn as clearly erroneous its determination that Rojas' consent was voluntarily given. We cannot say that it was clearly erroneous for the judge to accept the explanation of the agents that Rojas was handcuffed as a matter of routine precautionary police practice rather than in an attempt to intimidate Rojas into consenting. It is not clearly erroneous for the judge to accept that it is also routine practice to separate an interrogee from others before questioning him to eliminate distractions, to reduce inhibitions that the interrogee might feel answering with others present, and as a further precautionary safety measure. Even if some police actions in this case were "subtly coercive," it was still well within the trial court's discretion to weigh these factors against the greater number of factors that indicated Rojas' consent was freely and voluntarily given.

### IV.

For the foregoing reasons the judgment of the district court is hereby in all respects AFFIRMED.