EL PUEBLO DE PUERTO RICO en interés del menor N.O.R.

*Número:* AC-92-613 *Resuelto:* 12 de septiembre de 1994

*José F. Aguayo Díaz*, abogado del menor apelante; *Reina Colón de Rodríguez, Procuradora General Interina*, y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar*, abogadas de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 9 de marzo de 1992 se radicaron querellas ante el Tribunal Superior de Puerto Rico, Sala de Bayamón, contra el menor N.O.R., por hechos alegadamente ocurridos el 22 de enero de ese mismo año, en las cuales se le imputó a éste la comisión de las faltas de apropiación ilegal agravada (J-92-477) y violación a los Arts. 6 y 7 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 417 (J-92-455 y J-92-456, respectivamente).[1]

Los hechos que dieron base a la radicación de las referidas querellas fueron los siguientes: el día 22 de enero de 1992, *mientras el guardia de seguridad*, José Luis Vázquez Santiago, prestaba vigilancia en el estacionamiento del Centro Comercial conocido como "El Cantón Mall", en Bayamón, Puerto Rico, observó a dos (2) menores en "actitud sospechosa", uno de los cuales resultó ser el menor N.O.R. Éstos se encontraban "pegados" a uno de los vehículos del estacionamiento, lo cual le "pareció extraño" al referido guardia de seguridad. Al aparentemente percatarse los menores que estaban siendo observados por el guardia de seguridad, éstos se pusieron "nerviosos" y comenzaron a caminar. El guardia de seguridad se les acercó y les preguntó si necesitaban algo, a lo cual ellos no brindaron con-

---

[1] Según la aplicación del Art. 3 de la Ley de Menores de Puerto Rico, Ley Núm. 88 de 9 de julio de 1986 (34 L.P.R.A. sec. 2203), los Arts. 6 y 7 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 417, constituyen faltas tipo I y la apropiación ilegal agravada es una falta tipo II.

testación, continuando caminando. El guardia Vázquez Santiago, utilizando su sistema de comunicación, pidió ayuda a otro compañero. El Sargento Víctor Cruz López, perteneciente a la misma compañía privada de seguridad, respondió a la llamada; localizando a ambos menores en una de las entradas del Centro Comercial. Éste se aproximó a ellos y les preguntó si les podía ayudar en algo, a lo que el menor N.O.R. le respondió, en forma "nerviosa" que era de Vega Alta y que estaba perdido; el otro menor le expresó que era de Bayamón. *El Sargento Cruz López entonces observó que el apelante N.O.R. tenía un objeto, o "bulto", debajo de su camisa; pensó que podía ser un arma, por lo que le preguntó si podía subirse la camisa. El menor N.O.R., luego de negar que tuviese "algo", meramente levantó los brazos, acción que le permitió al Sargento Cruz López ver el cabo de un revólver en la cintura del menor.*(²) Cruz López inmediatamente procedió a aprehender (arrestar) a ambos menores, llamando a la Policía, quien se hizo cargo de éstos.(³) Ambos guardias de seguridad declararon en la vista del caso que, en el momento en que ellos *originalmente* intervinieron con los menores, éstos *no* habían cometido delito alguno y que ellos, los guardias, se encontraban uniformados.

El 7 de julio de 1992, la representación legal del menor N.O.R. solicitó la supresión de la evidencia ocupada por alegadamente la misma ser producto de una intervención y registro ilegal.(⁴) El 29 de septiembre de 1992, en la vista adjudicativa, el juez de instancia, a base de la prueba pre-

---

(²) El revólver incautado fue uno marca Colt 38, Special, con serie 810732, color negro, cañón de cuatro (4) pulgadas con "cachas" de madera. En el momento de ser aprehendido, el menor N.O.R. alegó que el arma que poseía pertenecía a su abuela, la Sra. Minerva Morales.

(³) La falta de apropiación ilegal agravada (Art. 166 del Código Penal, 33 L.P.R.A. sec. 4272), se le imputó por alegadamente apropiarse, sin intimidación ni violencia, del arma de fuego perteneciente a la Sra. Minerva Morales, la cual tiene un valor en exceso de doscientos dólares ($200).

(⁴) El tribunal de instancia, a solicitud de la Procuradora de Menores, determinó evaluar la moción de supresión de evidencia dentro de la vista adjudicativa, luego de escuchada la prueba, *con lo cual la defensa del menor N.O.R. estuvo de acuerdo.*

sentada por el Ministerio Público, declaró sin lugar la moción de supresión de evidencia,[5] procediendo a declarar al menor incurso en las faltas referentes a los Arts. 6 y 7 de la Ley de Armas de Puerto Rico, ante, y no incurso en relación con la falta de apropiación ilegal agravada. Se le impuso al menor una medida condicional por el término de un (1) año en cada una de las querellas en las cuales se le encontró incurso en falta, a ser cumplidos concurrentemente entre sí, quedando bajo la custodia de sus padres.

El 16 de octubre de 1992 compareció el menor N.O.R. ante este Tribunal, mediante escrito de apelación, alegando que erró el tribunal de instancia:

> ... al declarar sin lugar la supresión de la evidencia ocupada por ser la misma producto de una intervención y posterior registro ilegal en violación a los derechos del menor apelante. Informe, pág. 2.

I

La posición de la representación legal del menor N.O.R. es a los efectos de que la aprehensión practicada por los guardias de seguridad del centro comercial fue una ilegal por razón de que éste no había cometido delito alguno en su presencia. Alega, en adición, que dichos guardias de seguridad tampoco tenían motivos fundados para creer que se había cometido una falta. En consecuencia, sostiene que el registro, que tuvo como fruto el arma, fue uno ilegal e irrazonable. Procede que se enfatice, el hecho de que *no* se cuestiona la veracidad de la declaración de los testigos de cargo. Meramente se nos hace un planteamiento de derecho. Por su parte, el Procurador General alega que la evidencia obtenida no fue el producto de un registro incidental al "arresto" o aprehensión, y sí como producto de

---

[5] El juez de instancia determinó que "la intervención fue al ver el arma —el acto delictivo— y no cuando le preguntaron si le podían ayudar en algo".

una observación de un acto delictivo a plena vista, el cual tuvo como consecuencia la aprehensión de los menores.([6])

■ De entrada, cabe señalar que no obstante el hecho de que los procedimientos de menores gozan de una naturaleza "sui géneris", por lo que los mismos no constituyen propiamente causas criminales, *el menor al que se le imputa conducta constitutiva de delito puede reclamar aquellas garantías constitucionales que le aseguren un trato justo y un debido procedimiento de ley.* Véanse: *Pueblo en interés menor F.R.F.*, 133 D.P.R. 172 (1993); *Pueblo en interés menores A.L.R.G. y F.R.G.*, 132 D.P.R. 990 (1993); *Pueblo en interés menor R.G.G.*, 123 D.P.R. 443 (1989).

■ Dentro de ese marco de protección constitucional, el Art. 7 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2207, establece que:

El menor estará protegido contra registros, incautaciones y allanamientos irrazonables. Sólo se expedirá mandamiento judicial autorizando un registro o allanamiento contra un menor cuando exista causa probable apoyada en juramento o afirmación, y describiendo particularmente la persona o el lugar a ser registrado y las cosas a ocuparse.([7])

■ En adición, en vista de que el lenguaje de la disposición del Art. 7 de la Ley de Menores de Puerto Rico, ante, es similar a la Sec. 10 del Art. II de nuestra Constitución, L.P.R.A., Tomo 1,([8]) y del hecho que la actual Ley de

---

([6]) El Procurador General sostiene, en adición, que los guardias de seguridad, "[e]n el ejercicio de sus labores podían válidamente preguntar a los menores o a cualquier persona, o acercarse a ellos, para indagar sobre las verdaderas motivaciones de su presencia en el lugar o disipar una sospecha razonable"; aduce, además, que "sostener lo contrario reduciría su labor al absurdo y le restaría todo sentido a la figura de guardia de seguridad". Informe, pág. 9.

([7]) Como indicáramos en *Pueblo en interés menor R.G.G.*, 123 D.P.R. 443, 460 (1989), la Ley de Menores de Puerto Rico introdujo en la jurisdicción de menores la protección constitucional contra registros y allanamientos irrazonables.

([8]) La Sec. 10 del Art. II de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 299, establece:

"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.

Menores de Puerto Rico ha adoptado un enfoque de natu-
raleza punitiva, *determinamos que la llamada "Regla de
Exclusión" que surge del anterior precepto constitucional es
extensiva a los casos de menores de edad y que la jurispru-
dencia interpretativa de esta disposición es igualmente
aplicable a éstos.* Esto así, ya que la Regla 6.9 de Procedi-
miento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, re-
coge los fundamentos establecidos en la Regla 234 de Pro-
cedimiento Criminal, 34 L.P.R.A. Ap. II, siendo la doctrina
interpretativa de esta última aplicable a la primera.
Véanse: *Pueblo en interés menores A.L.R.G. y F.R.G.*, ante,
pág. 1007 esc. 7; D. Nevares-Muñiz, *Derecho de Menores*,
Hato Rey, Ed. Inst. Desarrollo del Derecho, 1987, pág.
80.([9])

■ La antes mencionada disposición constitucional
"está orientada a proteger a la persona, pertenencias e in-
timidad del hogar" frente a cualquier actuación irrazona-
ble por parte del Estado. D. Nevares-Muñiz, *Sumario de
derecho procesal penal puertorriqueño*, 3ra ed. rev., Hato
Rey, Ed. Inst. Desarrollo del Derecho, 1989, pág. 61. Pro-
tege, además, a la persona de intervenciones irrazonables
en su cuerpo por parte del Estado. *Pueblo v. Falú Martínez*,
116 D.P.R. 828 (1986); Nevares-Muñiz, *op. cit.*, pág. 61.
*Cabe señalar que no toda intervención policiaca con una*

---

"No se interceptará la comunicación telefónica.

"Sólo se expedirán mandamientos autorizando registros, allanamientos o arres-
tos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada
en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las
personas a detenerse o las cosas a ocuparse.

*"Evidencia obtenida en violación de esta sección será inadmisible en los
tribunales."* (Énfasis suplido.)

([9]) En la jurisdicción federal se ha resuelto que la Cuarta Enmienda de la Cons-
titución de los Estados Unidos, L.P.R.A., Tomo 1, referente a registros y allanamien-
tos irrazonables, es aplicable a los asuntos de menores. *New Jersey v. T.L.O.*, 469
U.S. 325 (1985); *United States v. Sechrist*, 640 F.2d 81 (7mo Cir. 1981); *United States
v. Indian Boy X*, 565 F.2d 585 (9no Cir. 1977); *U.S. v. Doe*, 801 F. Supp. 1562 (D. Tex.
1992). En referencia a distintas jurisdicciones estatales, véanse: *David M. Scott
Const. Corp. v. Farrell*, 592 P.2d 551 (Or. 1979); *In re Marsh*, 237 N.E.2d 529 (1968).
Véanse, además: S.M. Davis, *Rights of Juveniles*, 2da ed., Nueva York, Ed. Clark,
Boardman & Callaghan, y casos allí citados; S.J. Fox, *The Law of Juvenile Courts*,
2da ed., Minnesota, Ed. West Publishing Co., 1977.

*persona constituye una detención o un arresto.* Pueden existir circunstancias en las cuales un funcionario del orden público interviene con una persona —con el propósito de obtener información— sin efectivamente restringirle la libertad a esta persona. *Pueblo v. Ruiz Bosch,* 127 D.P.R. 762 (1991).

■ Al examinar la situación, donde se alega que una persona ha sido arrestada ilegalmente, venimos obligados a determinar, primeramente, *si efectivamente a esa persona se le ha restringido su libertad.* A esos efectos, en *Pueblo v. Pacheco Báez,* 130 D.P.R. 664, 668–669 (1992), describimos la situación en que una persona se encuentra efectivamente arrestada:

> "Un arresto es el acto *de poner a una persona bajo custodia* en los casos y del modo que la ley autoriza. Podrá hacerse por un funcionario del orden público o por una persona particular. *El arresto se hará por medio de la restricción efectiva de la libertad de la persona o sometiendo a dicha persona a la custodia de un funcionario.* El arrestado no habrá de estar sujeto a más restricciones que las necesarias para su *arresto y detención,* y tendrá derecho a que su abogado o su familiar más cercano lo visite y se comunique con él. ..."
> Una persona queda arrestada *cuando está efectivamente restringida en su libertad. Pueblo v. Tribunal Superior,* 97 D.P.R. 199, 201 (1969). En un caso donde ha habido una demostración de autoridad por parte de un agente del orden público, y la persona la ha acatado, la determinación de si ésta ha sido o no arrestada no puede hacerse depender exclusivamente del hecho de que el agente del orden público le haya informado o no al detenido de su intención de ponerlo bajo arresto. Tampoco depende exclusivamente de si el agente tuvo la intención de que la intervención fuera efectuada con el propósito de arrestar a la persona o que así fuera entendida por el detenido. Estos elementos subjetivos no configuran por sí solos un arresto. *Si se está o no bajo arresto depende de si al hacer un análisis objetivo de la totalidad de las circunstancias que rodean el incidente se puede concluir que una persona prudente y razonable, inocente de todo delito, hubiera pensado que no estaba en libertad de marcharse.* (Énfasis suplido y en el original.)

En el ámbito federal se ha resuelto que la Cuarta En-

mienda federal, ante, no tiene el propósito de eliminar todo contacto entre la policía y la ciudadanía, y sí el prevenir toda interferencia arbitraria y opresiva por parte de estos con la intimidad y seguridad personal de los ciudadanos. *U.S. v. Mendenhall*, 446 U.S. 544 (1980); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976). Se entiende que una persona ha sido arrestada, a la luz de la Cuarta Enmienda constitucional federal, ante, sólo si, *a la luz de la totalidad de las circunstancias que rodean el incidente entre la Policía y el presunto arrestado*, una persona razonable hubiese creído que no estaba en libertad de poder marcharse del lugar. *U.S. v. Mendenhall*, ante. "Cualquier otra detención, siempre que sea voluntariamente aceptada, no posee carácter de incautación por lo que no presta viso de irrazonabilidad constitucional." O. Resumil de Sanfilippo, *Derecho Procesal Penal*, New Hampshire, Equity Publishing Co., 1990, T. 1, Sec. 9.2, pág. 214. Véase *Florida v. Royer*, 460 U.S. 491 (1983).

En *Florida v. Royer*, ante, el Tribunal Supremo de los Estados Unidos resolvió que los oficiales del orden público no violan la Cuarta Enmienda de la Constitución de los Estados Unidos, ante, por acercarse a un individuo en un lugar público y preguntarle si desea contestar algunas preguntas. A esos efectos, expresó dicho Tribunal:

> ... law enforcement officers do no violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answer to such questions... [n]or would the fact that the officer indentifies himself as a police officer without more convert the encounter into a seizure requering some level of objetive justification. ... If there is no detention —no seizure within the meaning of the Fourth Amendment— then no constitutional rights have been infringed. (Citas omitidas.) *Florida v. Royer*, ante, págs. 497–498.

Cuando la intervención del oficial del orden público pasa de este nivel —*es decir, cuando se restringe la libertad de*

*una persona*— comienza a activarse la protección constitucional contra registros y allanamientos irrazonables. Véanse: *Florida v. Royer*, ante; *Tennessee v. Garner*, 471 U.S. 1 (1984).

En el caso de autos, *y a la luz de la totalidad de las circunstancias*, concluimos que el encuentro y conversación entre los agentes de seguridad y los menores fue libre, voluntario y espontáneo; donde éstos tenían la entera libertad de marcharse del lugar. *No se desprende que hubo ningún grado de restricción a la libertad de los menores, ni medió coacción o intimidación por parte de los guardias de seguridad, y, mucho menos, fuerza o violencia.* Estos menores *no* fueron "arrestados" con anterioridad al momento en que se observa el arma de fuego.(¹⁰) El mero "contacto" inofensivo entre miembros de la Policía y un ciudadano no puede, en materia de ley, considerarse un arresto. *U.S. v. Mendenhall*, ante; *Pueblo v. Ruiz Bosch*, ante.

## III

Habiendo determinado que el menor N.O.R. *no* se encontraba arrestado y, por ende, tenía entera libertad de

---

(¹⁰) Los guardias de seguridad no tenían autoridad legal para arrestar a los menores con anterioridad al momento en que observaron el arma en posesión del menor apelante. La Regla 2.4(b) de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A, establece las instancias en que una persona particular —como en este caso los guardias de seguridad— puede aprehender (arrestar) a un menor, a esos efectos señala:

"(b) ... Una persona particular podrá aprehender a un menor:

"(1) Por una falta cometida o que se hubiere intentado cometer en su presencia. En este caso deberá hacerse la aprehensión inmediatamente.

"(2) Cuando en realidad se hubiere cometido una falta Clase II o III y dicha persona tuviere motivos fundados para creer que el menor aprehendido la cometió, la persona particular deberá conducir de inmediato al menor a un funcionario del orden público quien procederá como si él hubiere efectuado la aprehensión y conducirá al menor sin demora innecesaria ante un juez, según se dispone en estas reglas."

En el caso de autos, los menores al ser interrogados no habían cometido ni intentado cometer una falta en la presencia de los agentes; ni éstos tenían motivos fundados para creer que éstos en realidad hubieren cometido una falta de clase II o III.

marcharse, *debemos resolver si el "hallazgo" del objeto delictivo fue producto de un registro ilegal o como parte de la observación del guardia de seguridad por encontrarse el arma a plena vista.*

▮ En este punto cabe señalar que, aun cuando la intervención fue realizada por un agente de *seguridad privada* del referido Centro Comercial, *a esta situación le es aplicable la restricción constitucional de la citada Sec. 10 del Art. II de nuestra Constitución, ante.* Véase *Pueblo v. Rosario Igartúa,* 129 D.P.R. 1055 (1992). En dicho caso se expresó que cuando un ciudadano particular —como en este caso el guardia de seguridad privado— actúa como agente o instrumento del Estado, o a instancia o en cooperación con el Gobierno, se activa la protección constitucional contra registros y allanamientos irrazonables.[11]

En el caso ante nos, los guardias de seguridad del centro comercial estaban realizando una de las actividades que tradicionalmente se le atribuye al Estado, a saber, la investigación y detención del crimen, *por lo que los mismos estaban sujetos a las correspondientes restricciones constitucionales*; ello así ya que el Estado no puede liberarse de su responsabilidad constitucional, en la operación gubernamental, meramente delegando ciertas funciones a entes privados. *Pueblo v. Rosario Igartúa,* ante, pág. 1075.[12]

---

[11] Este Tribunal acogió así los criterios esbozados por el Tribunal Supremo de los Estados Unidos en *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982), para determinar cuando una persona particular que realiza un registro está limitada por la mencionada cláusula Constitucional. A esos efectos, expresó:

" 'Primero, la privación tiene que ser causada por el ejercicio de algún derecho o privilegio creado por el Estado o por una regla de conducta impuesta por el Estado o por una persona de quien el Estado es responsable .... Segundo, la parte a quien se le imputa la privación tiene que ser una persona de quien razonablemente se pueda decir que es un actor del Estado. Esto puede ser porque es un oficial del Estado, porque ha actuado en conjunto o ha obtenido asistencia significativa de oficiales del Estado o *porque su conducta es de otra forma atribuible al Estado.*' " (Énfasis suplido.) *Pueblo v. Rosario Igartúa,* 129 D.P.R. 1055, 1073 (1992).

[12] El Tribunal, en *Pueblo v. Rosario Igartúa,* ante, pág. 1073, citó al profesor Chiesa en su obra *Derecho procesal penal de Puerto Rico y Estados Unidos,* Colombia, Ed. Forum, 1991, Vol. I, Sec. 6.27A, pág. 508, al señalar que

 La jurisprudencia interpretativa de la garantía contra registros y allanamientos irrazonables ha hecho extensiva la misma tanto a registros, allanamientos e incautaciones de índole penal, como administrativa, y ha creado una presunción de invalidez cuando éstos se llevan a cabo sin orden judicial previa. *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984). Ante la ausencia de una orden judicial que autorice la intervención, el Ministerio Público viene en la obligación de demostrar la existencia de circunstancias que hicieron innecesaria la obtención de la orden judicial. Véanse: *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979).

La jurisprudencia ha reconocido, entre otras situaciones: cuando la evidencia se encuentra a plena vista, *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); cuando la evidencia es arrojada o abandonada, *Pueblo v. Lebrón*, ante; cuando la evidencia es obtenida en el transcurso de una persecución, *Pueblo v. Riscard*, 95 D.P.R. 405 (1967); cuando la evidencia es obtenida en un registro administrativo en una actividad altamente reglamentada por el Estado, *E.L.A. v. Coca Cola Bott. Co.*, ante, y cuando ha mediado consentimiento para el registro, *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988), y *Pueblo v. Falú Martínez*, ante.

Ante toda controversia relacionada con la protección constitucional contra registros y allanamientos irrazonables, *lo primero a determinar lo es la existencia, o no, de un registro.*[13] Se entiende que ha ocurrido un registro cuando

---

" 'Una zona especial la constituye la "seguridad privada", esto es, los agentes de seguridad en el sector privado, encargados de la vigilancia de establecimientos comerciales, escuelas, condominios, etc.; también caben aquí los detectives o investigadores de seguros. *Se favorece aquí la aplicación de la protección en virtud de que estos agentes, guardias o detectives privados ejercen una función pública estrechamente vinculada al procedimiento criminal.'* " (Énfasis suplido.)

[13] El Tratadista W.R. LaFave, en su obra *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, págs. 301–306, nos define un registro como:

"... some exploratory investigation or an invasion and quest, a looking for or seeking out. The quest may be secret, intrusive, or accomplished by force and it has been held that a search implies some sort of force, either actual or constructive,

se infringe la expectativa de intimidad que la sociedad está preparada a reconocer como razonable. *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394 (1983); *U.S. v. Jacobsen*, 466 U.S. 109 (1983); *Katz v. U.S.*, 389 U.S. 347 (1967). A esos mismos efectos, en *Pueblo v. Lebrón*, ante, pág. 331, dijimos que:

La cuestión central es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete.

■ En reiteradas ocasiones hemos expresado que *los valores centrales protegidos por dicha garantía constitucional son la intimidad y dignidad del ser humano.* Véanse: *Pueblo v. Ríos Colón*, 129 D.P.R. 71 (1991); *Pueblo v. Lebrón*, ante. En *Pueblo v. Ríos Colón*, ante, págs. 684–685, *enumeramos los factores a considerar para determinar si la persona registrada tenía una expectativa razonable de intimidad, a saber:* (1) el lugar registrado o allanado; (2) naturaleza y grado de intrusión de la intervención policiaca; (3) el objetivo o propósito de la intervención; (4) si la conducta de la persona era indicativa de una expectativa subjetiva de intimidad; (5) la existencia de barreras físicas que restrinjan la entrada o visibilidad al lugar registrado; (6) la cantidad de personas que tienen acceso legítimo al lugar registrado, y (7) las inhibiciones sociales relacionadas con el lugar registrado. Véase, además, *Pueblo v. Rivera Colón*, 128 D.P.R. 672 (1991). Ninguno de estos factores es determinante, debiendo examinarse todos en conjunto. *Pueblo v. Rivera Colón*, ante, pág. 685.

■ Nuestra Constitución reconoce, como parte del derecho a la intimidad, *la protección sobre la persona, la cual evidentemente incluye la protección sobre su cuerpo y sus pertenencias.* En Puerto Rico se ha entendido *que existe un registro cuando se busca en el cuerpo de una persona un*

---

much or little. A search implies a prying into hidden places for that wich is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a search."

*objeto*, esto independientemente de que dicha intervención sea razonable o no. Véase *Pueblo v. González Rivera*, 100 D.P.R. 651 (1972). Por otro lado, *no* hay expectativa de intimidad por parte de una persona cuando exhibe objetos a plena vista sobre su cuerpo. Véase *Pueblo v. Dolce*, ante.

En el caso de autos, somos del criterio que la solicitud del guardia de seguridad para que el menor se subiera la camisa constituyó una solicitud para efectuar un registro sobre el cuerpo de éste; *solicitud que al ser consentida parcialmente por el menor dio lugar a que visualmente se efectuara un registro sobre la persona del menor.* No hay duda que la intención del guardia de seguridad era comprobar su sospecha a los efectos de que el menor estaba armado. Sabido es que existe un registro, por limitado que sea, cuando se hace una exploración superficial en la ropa de una persona con la intención de encontrar armas u otros objetos delictivos. Véanse: *Pueblo v. González Rivera*, ante; *Terry v. Ohio*, 392 U.S. 1 (1968);([14]) Resumil, ante, pág. 215. No estamos ante una situación en la cual un agente del orden público o guardia de seguridad observa, de primera impresión, que una persona posee un arma. En este caso, el agente tuvo que solicitarle al menor que se subiera la camisa para poder comprobar lo que, originalmente, él pensó o sospechó que podía ser un arma.

## IV

Ante la existencia de un registro en el caso de autos, *procede que examinemos la razonabilidad del*

---

([14]) En *Terry v. Ohio*, 392 U.S. 1 (1983), el Tribunal Supremo federal validó a la luz de la Cuarta Enmienda de la Constitución de los Estados Unidos, referente la misma a registros y allanamientos irrazonables, el detener a una persona y someterla a un registro superficial para detectar armas, a pesar de no existir causa probable para un arresto. Esta doctrina es conocida como *Stop and Frisk* y su futuro aún es incierto en nuestra jurisdicción, ya que sabido es que la protección constitucional contra registros y allanamientos puede ser expandida más allá de los límites de la Cuarta Enmienda federal, ante. Véanse: *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988); *Pueblo v. Dolce*, 105 D.P.R. 422 (1976).

*mismo*. Es decir, "[a]l igual que en el caso del arresto, la razonabilidad de la intervención será la piedra angular de su validez constitucional". Resumil, *ante*, Sec. 8.3, pág. 205. *La razonabilidad dependerá del balance entre el interés público y el derecho del ciudadano a su seguridad personal, libre de interferencias arbitrarias por parte del Estado.* Íd., pág. 161; *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). La razonabilidad será definida a base de lo que es aceptado como razonable por la sociedad. *Oliver v. United States*, 466 U.S. 170 (1984).[15]

En el caso de autos, somos del criterio que el registro, en el cual fue obtenido el objeto delictivo, *fue consentido y razonable*; ello en vista de que el menor N.O.R., como anteriormente expresáramos, *consintió* a ser "registrado" y que el registro fue uno limitado a su cuerpo, para lo cual él había prestado su consentimiento. *Veamos*. Nuestra jurisprudencia ha señalado que la protección contra registros y allanamientos irrazonables *puede ser renunciada*. Véanse: *Pueblo v. Narváez Cruz*, ante, pág. 436; *Pueblo v. Seda*, 82 D.P.R. 719 (1961). Esta renuncia debe ser voluntaria y prestada por quien tenga autoridad para ello. Véase *Pueblo v. Narváez Cruz*, ante, pág. 436. A esos efectos, el Prof. Ernesto L. Chiesa, en su obra *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, pág. 120, señala que

---

[15] Luego de determinar que hubo un registro, procede examinar la legalidad del mismo; a esos efectos debemos entrar en el campo de la razonabilidad de la intervención a la luz de los hechos y circunstancias del caso. *Pueblo v. Ríos Colón*, 129 D.P.R. 71 (1991). En dicho caso expresamos, además, que para determinar si un registro es irrazonable debemos considerar si:

"(a) En su origen, la intervención con la persona en el lugar que sería registrado estuvo justificada. Aquí debemos examinar la expectativa razonable de intimidad del intervenido en el lugar donde se encontraba y si la funcionaria del Estado tenía motivos fundados para intervenir, y si su presencia en el lugar donde se encontraba la persona que sería registrada estaba justificada.

"(b) Una vez superada esa justificación inicial, debemos examinar si el alcance o la amplitud del registro (como se condujo) esta razonablemente relacionada con las circunstancias que justificaron la intervención en primer lugar. Tal registro no puede ser excesivamente intrusivo en la persona que es registrada." (Escolio omitido.) *Pueblo v. Ríos Colón*, ante, págs. 86–87.

... si una persona accede a un registro —contra el cual tenga alguna protección constitucional— renuncia a la protección y queda así validada la actuación gubernamental, el efecto concreto es que no progresaría una moción de supresión de evidencia con relación a una incautación producto de un registro consentido. Por supuesto, la renuncia debe ser voluntaria es decir, sin coacción física o mental, por parte de las autoridades.

En *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770 (1982), este Tribunal esbozó los fundamentos para permitir un registro consentido. A esos efectos, expresó:

Varias razones de peso se aducen para fundamentar la alternativa de proceder a un registro luego de obtenerse el consentimiento. Se estima que puede ser percibido como el curso de acción más seguro en términos de minimizar el riesgo de la supresión. Ello tiende a economizar tiempo cuando ese factor es esencial. De igual modo se prescinde de cumplir con los requisitos técnicos exigidos para una solicitud y expedición del mandamiento. *Aún más, se acepta que puede solicitarse el consentimiento sin existir evidencia de causa probable, ya que provee un mecanismo de pronta exoneración de aquellas personas sobre las cuales se ha sospechado erróneamente.* (Citas omitidas y énfasis suplido.) *Pueblo v. Acevedo Escobar*, ante, págs. 777–778.

La renuncia a este derecho puede ser una expresa o implícita (tácita). Véase *Pueblo v. Acevedo Escobar*, ante, pág. 777. Una forma en que se entiende prestado el consentimiento implícito es aquella donde una persona obedece sin protestar al pedido de un funcionario; la persona no accede expresamente pero su acto, en unión a un examen de la totalidad de las circunstancias, demuestra su intención de consentir el registro. Véase *Pueblo v. Acevedo Escobar*, ante.[16]

---

[16] En este caso, unos agentes del orden público detuvieron un vehículo de motor con la intención de solicitarle al conductor las licencias de conducir y del vehículo. Uno de los agentes le solicitó en adición que abriera el baúl del vehículo, el conductor accedió encontrándose en el mismo un bulto cerrado del cual salía olor a marihuana. Se procedió a arrestar al detenido y se abrió el bulto encontrándose la marihuana. El tribunal entendió que el baúl había sido abierto por consentimiento del conductor y que el bulto fue registrado por encontrarse la evidencia a plena vista (olfato). En este caso el Tribunal tomó en consideración el hecho de que el arrestado

En *Pueblo v. Seda*, ante, pág. 729, establecimos unos *criterios* para determinar si medió o no una renuncia expresa o tácita, a saber: (1) si medió fuerza o violencia; (2) si el registro fue practicado después de un arresto, y (3) si se encontraban otras personas presentes. Véase, además, *Pueblo v. Acevedo Escobar*, ante, pág. 777. La prueba sobre la renuncia a este derecho *ha de ser clara*, demostrativa de que no existió coacción verdadera de clase alguna, directa o indirecta. *Pueblo v. Acevedo Escobar*, ante, pág. 777; *Pueblo v. Tribunal Superior*, 91 D.P.R. 19 (1964).

En la jurisdicción federal se ha resuelto que la voluntariedad de la renuncia dependerá de la *totalidad de las circunstancias*, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973);[17] *no* bastando demostrar una mera sumisión a la autoridad de un oficial del orden público (*Florida v. Royer*, ante, pág. 497). No se requiere que el titular de este derecho esté consciente expresamente de que tiene el derecho a no consentir; la importancia estriba en demostrar la necesidad legítima de practicar el registro y la ausencia de coacción física o psicológica, *Schneckloth v. Bustamonte*, ante, garantía esta última de la voluntariedad del consentimiento otorgado (Resumil, ante, pág. 241).

En *Schneckloth v. Bustamonte*, ante, el Tribunal Supremo de los Estados Unidos se negó a aplicar, para sostener la validez de la renuncia a este derecho, los requisitos de conocimiento previo del derecho y de las consecuencias de la renuncia. Resumil, ante, pág. 242. A esos efectos, señaló que estos requisitos se articularon para aquellos derechos dirigidos a garantizar un juicio justo y el descubrimiento de la verdad. Se expresó:

---

era un agente de Rentas Internas que se suponía que conocía sus derechos.

([17]) Véanse, además: *U.S. v. Most*, 876 F.2d 191 (D.C. 1989); *González v. U.S.*, 842 F.2d 1391 (5to Cir. 1988); V.L. Eiben, *The Good Faith Exception to the Exclusionary Rule: The New Federalism and a Texas Proposal*, 18 St. Mary's L.J. 1369 (1987); S.J. Gately, *Criminal Procedure —Search and Seizure— A Reasonable Belief that a Third Party Had Authority to Consent to a Search in an Exception to the Warrant Requirement*, 22 St. Mary's L.J. 541 (1990).

The requirement of a "knowing" and "intelligent" waiver was articulated in a case involving the validity of a defendant's decision to forgo a right constitutionally guaranteed to protect a fair trial and the reliability of the truth-determining process. *Johnson v. Zerbst, supra*, dealt with the denial of counsel in a federal criminal trial.

. . . . . . .

Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial. Hence, and hardly surprisingly in view of the facts of *Johnson* itself, the standard of a knowing and intelligent waiver has most often been applied to test the validity of a waiver of counsel, either at trial, or upon a guilty plea. And the Court has also applied the *Johnson* criteria to assess the effectiveness of a waiver of other trial rights such as the right to confrontation, to a jury trial, and to a speedy trial, and the right to be free from twice being placed in jeopardy. (Escolios omitidos.) *Schneckloth v. Bustamonte*, ante, págs. 236–238.

■ *Al examinar la totalidad de las circunstancias, se debe considerar, entre otros factores*: la edad, inteligencia aparente, si hubo advertencia previa de los derechos constitucionales, cuánto tiempo estuvo detenido previo a éste prestar el consentimiento, si hubo coacción física o si se estaba bajo custodia policiaca. *Schneckloth v. Bustamonte*, ante, pág. 226; *United States v. Rojas*, 783 F.2d 105, 109 (7mo Cir.), *cert.* denegado, 479 U.S. 856 (1986). El tribunal debe tomar en consideración, en adición, si hubo tretas o engaños, promesas o indicación de alguna clase de coacción; al igual que si el consentimiento fue prestado en un sitio público o mientras se encontraban en una estación de policía y, a su vez, si hay indicación alguna de deficiencia mental o cualquier otro motivo que le impida al sujeto escoger libremente entre las alternativas de consentir o no. Véase *United States v. Watson*, 423 U.S. 411 (1976).([18])

---

([18]) Entre otros factores a considerar, se pueden mencionar: si hubo ausencia de reclamo de autoridad por parte del oficial, o demostración de fuerza, o engaño por parte de éste o si fue un mero requerimiento de registro. Postman, *State v. Arroyo: Consent Searches following illegal policer conduct—remaning the taint from the fruit of poisonous tree*, 18 J. Contemp L. 107 (1992).

En los casos de menores, al igual que en los casos de adultos, la garantía constitucional contra registros y allanamientos irrazonables *no* aplica cuando el registro o allanamiento fue efectuado con el consentimiento del menor. S.J. Fox, *The Law of Juvenile Courts*, 2da ed., Minnesota, Ed. West Publishing Co., 1977, pág. 123.([19]) En casos de menores, cabe resaltar que el factor de edad *no* puede ser visto como el factor crítico en la determinación de si la renuncia a este derecho fue válida. *El análisis será a la luz de la totalidad de las circunstancias*, considerando entre otros factores la educación, inteligencia, experiencia previa con la policía y los tribunales, condición física y si hubo ausencia de objeción y cooperación física. Véanse: G.B. Melton, G.P. Koocher y M.J. Sans, *Children's Competence to Consent*, Nueva York, Plenum Press, 1993; S.M. Davis, *Rights of Juveniles*, 2da ed., Nueva York, Ed. Clark, Boardman & Callaghan, pág. 3.39; Dale, *Juvenile Law*, 14 Nova L. Rev. 859 (1990). A esos mismos efectos, véanse, en las distintas jurisdicciones estatales: *People v. Lara*, 432 P.2d 202 (Cal. 1967); *In re Ronny*, 242 N.Y.S.2d 844 (1963). En adición, se debe tomar en consideración la suceptibilidad del menor para intimidarse con la presencia policiaca. Fox, ante, pág. 124.([20])

En el caso de autos, somos del criterio, en conclusión, que el menor N.O.R., al subir las manos sin objeción alguna, reflejó una conducta compatible con una renuncia a un registro sin orden.([21]) Véase *Pueblo v. Acevedo Escobar*,

---

([19]) Véanse, además: *Saavedra v. State*, 622 So. 2d 952 (1993); *In re V.*, 517 P.2d 1145 (Cal. 1974).

Un problema en estos casos en que en algunas situaciones no está muy claro cuando es que la policía genuinamente está pidiendo permiso para registrar o meramente está expresando su intención de registrar independientemente de que obtenga el consentimiento del menor; resultando éste último en un registro inválido. Fox, ante, pág. 123.

([20]) Sobre este particular, debemos señalar que algunas jurisdicciones estatales no siempre toman en consideración este hecho. Véanse: *In re V.*, ante; Fox, ante, pág. 124.

([21]) No se puede inferir por el hecho de que el menor respondió de forma contraria a sus propios intereses, de que éste fue obligado a su registro. Véase *U.S. v.*

ante. Ni siquiera por el tipo de preguntas que se le hizo al menor se puede inferir que hubo coacción. Al igual que en el caso antes citado, no pasamos por alto el hecho de que estos guardias de seguridad privados, al estar uniformados, pudieron constituir un elemento intimidante; pero esta sola circunstancia, de por sí, no es suficiente para desvirtuar la validez y voluntariedad del consentimiento. Íd., págs. 778–779. En el caso de autos, el menor no cumplió enteramente con la petición del guardia de seguridad de subirse la camisa, meramente subió sus manos. Entendemos, y así lo resolvemos, que éste no fue coaccionado en forma alguna y que el referido menor consintió al registro efectuado. No nos encontramos con un menor de edad imposibilitado de conocer las consecuencias de sus actos; éste, al momento de los hechos, tenía diecisiete (17) años de edad, cursaba el undécimo grado de Escuela Superior, posee un gran potencial intelectual, y con una gran capacidad y madurez.[22] Nada en el expediente sugiere que el menor N.O.R. tuviese alguna razón objetiva para creer que él no estaba en posición de irse y así terminar la conversación. En resumen, entendemos que, el agente al hacerle la invitación de subirse la camisa, no coaccionó al menor. Véase *U.S. v. Mendenhall*, ante.

---

*Mendenhall*, ante, pág. 555.

[22] Informe rendido por la Trabajadora Social fechado 1ro de mayo de 1992. En lo referente a lo dispuesto en el Art. 11 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2211, a los efectos de que no se admitirá la renuncia de un menor a cualquier derecho constitucional sin la presencia de sus padres o encargados y de su abogado, en adición de una determinación del juez de que está en libre, inteligente y con conocimiento de las consecuencias, la misma es inaplicable en esta situación de hechos. Somos del criterio que esta regla cobija aquellas instancias donde el menor se encuentra bajo la protección de la Ley de Menores de Puerto Rico, es decir desde el momento en que se encuentra bajo la custodia temporal o detención por parte de los oficiales del orden público; es decir no aplica en aquellos registros consentidos en los cuales el menor no se encuentra bajo custodia policiaca. C.R. *People in Interest of S.J.*, 778 P.2d 1384 (Col. 1989). Sería un tanto absurdo en la situación de hechos exigir la presencia de los padres y de su abogado; a su vez esto no desvirtúa la renuncia del menor a su derecho, toda vez que posteriormente el juez de instancia a la luz de la totalidad de las circunstancias examinará la voluntariedad de la misma.

## V

Aunque entendemos que la evidencia obtenida realmente no estaba "a plena vista", ya que la misma no se obtuvo inadvertidamente y sí como parte de un registro consentido,[23] somos del criterio que, a la luz de la totalidad de las circunstancias del caso, resultó legal la aprehensión realizada; esto así, ya que se cumplió con el requisito de "falta cometida ... en su presencia" establecido en la Regla 2.4(b)(1) de Procedimiento para Asuntos de Menores, 34 L.P.R.A. Ap. I-A.[24] Sabido es que la posesión y portación de un arma de fuego por un menor de edad *efectivamente* constituye una falta por infracción a los Arts. 6 y 7 de la Ley de Armas de Puerto Rico, ante. *Los menores de edad no cualifican para solicitar y obtener una licencia para poseer un arma de fuego, por lo que no están autorizados a tenerla.*[25] *Tampoco están autorizados para portar, transportar y conducir armas legalmente.* Véase el Art.

---

[23] Nuestra jurisprudencia ha señalado que se considera que la evidencia o el acto ilegal se encuentra a plena vista cuando: (1) el artículo fue descubierto por estar a plena vista o percepción del agente, y *no en el curso o por razón de un registro*; (2) el agente que observó la prueba tenía derecho previo a estar en la posición donde podía verse tal prueba; (3) el objeto fue descubierto inadvertidamente, y (4) la naturaleza delictiva del objeto surgía de la simple observación. Véase *Pueblo v. Dolce*, ante.

En el caso de autos, la evidencia fue obtenida luego de un registro y no inadvertidamente; la primera percepción visual del agente fue lo que alegadamente el pensó que podía ser un arma. A esos efectos, en *Pueblo v. Ríos Colón*, ante, pág. 94, habíamos expresado que "[l]a mera sospecha nunca ha sido suficiente para apoyar la intervención con un ciudadano por parte de un funcionario del Estado" (énfasis suprimido), refiriéndose esto a un registro; se requiere causa probable. O. Resumil de Sanfilippo, *Derecho Procesal Penal*, New Hampshire, Equity Publishing Co., 1990, T. 1, pág. 435.

[24] A iguales efectos, en *Pueblo v. Corraliza Collazo*, 121 D.P.R. 244, 248 (1988), señalamos que:

"... [S]i una persona deja ver un arma a la vista de un policía, tal hecho tiene el efecto de establecer la comisión de un delito en su presencia y puede éste legalmente proceder a su arresto." Véase *Pueblo v. Márquez*, 36 D.P.R. 265 (1927).

[25] El Art. 12 establece como requisito para solicitar licencia de posesión de un arma de fuego, que la persona haya cumplido veintiún (21) años de edad. 25 L.P.R.A. sec. 428.

En *Pueblo v. Muñoz, Colón y Ocasio*, 131 D.P.R. 965, 987–988 (1992), expresamos que:

20 de la Ley de Armas de Puerto Rico, según enmendado, 25 L.P.R.A. sec. 430.

## VI

En vista de lo antes expuesto, resulta correcta la determinación denegatoria del tribunal de instancia de la solicitud de supresión de evidencia. *Procede, pues, la confirmación de la sentencia apelada.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García concurrió con el resultado sin una opinión escrita. El Juez Asociado Señor Hernández Denton disintió con una opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin una opinión escrita.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

En vista de que nuestra Constitución es de factura más amplia que la Constitución de Estados Unidos, entendemos que este Tribunal no debe adoptar mecánicamente la norma de *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). La opinión mayoritaria, en el caso de autos, convalida que una persona renuncie a la protección constitucional contra registros irrazonables sin conocer que tiene el derecho a rechazar un registro sin orden.

Sobre estos extremos, coincidimos con la opinión disidente del Juez Brennan en *Schneckloth v. Bustamonte*, su-

---

"En Puerto Rico el poseer un arma de fuego no es un derecho, sino un privilegio. La regla general es de restricción o control en materia de posesión y/o portación de armas de fuego, constituyendo la portación autorizada la excepción de dicha regla general. En consecuencia, un agente del orden público tiene derecho a detener y cuestionar al ciudadano que así actúa, y ocupar el arma de fuego hasta que se le demuestre que estaba autorizado a poseerla."

pra, págs. 276–277, quien concluyó que le era imposible comprender la aseveración de la mayoría acerca de que un ciudadano pueda renunciar a algo tan preciado como una garantía constitucional sin tan siquiera conocer que, sin su consentimiento, esta violación de su intimidad estaría constitucionalmente prohibida:

> The Fourth Amendment specifically guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." ... The Court holds today that an individual can effectively waive this right even though he is totally ignorant of the fact that, in the absence of his consent, such invasions of his privacy would be constitutionally prohibited. It wholly escapes me how our citizens can meaningfully be said to have waived something as precious as a constitutional guarantee without ever being aware of its existence. *Schneckloth v. Bustamonte*, supra, págs. 276–277.

Entendemos que la renuncia al derecho constitucional que protege a las personas contra registros y allanamientos irrazonables debe ser informada. En el caso particular de los menores, la doctrina aprobada por una mayoría del Tribunal ignora totalmente que éstos tienen un mayor desconocimiento de sus derechos constitucionales y que los tribunales tenemos la obligación de examinar con más rigurosidad las intervenciones del Estado con sus derechos.

De los autos se desprende que, en este caso, los menores no estaban ni conscientes de sus derechos a rechazar la petición de los guardias ni informados sobre el alcance de la protección constitucional contra registros irrazonables. Por ende, el consentimiento estuvo viciado y procedía la supresión de la evidencia obtenida por el registro ilegal.

Disentimos.