EL PUEBLO DE PUERTO RICO, peticionario, *v.* EDUARDO REYNOLDS ROMÁN, recurrido.

Número: CE-92-460          Resuelto: 17 de enero de 1995

*Anabelle Rodríguez, Procuradora General,* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Peter Ortiz,* abogado del recurrido.

## SENTENCIA

El caso de autos se inició mediante la presentación de veintiuna (21) acusaciones contra el Sr. Eduardo Reynolds Román por violaciones al Art. 18 de la Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec. 3217),(¹) la Sec. 2-205(e) de la Ley Núm. 141 de 20 de julio de 1960, según enmendada por la Ley Núm. 104 de 15 de julio de 1988 (9 L.P.R.A. sec. 436(e))(²) y los Arts. 166 y 272 del Código Penal, 33 L.P.R.A. secs. 4272 y 4592.(³)

El acusado recurrido presentó una moción de supresión de evidencia y una moción de desestimación de los catorce (14) cargos imputados por violación a la Ley Núm. 141, *supra*, para convertirlos en uno (1) solo. Ambas fueron señaladas para vista, durante la cual las partes presentaron la prueba testifical. Al concluir la vista, el tribunal les ordenó que presentaran los memoriales de derecho. El tribunal estimó probados los hechos siguientes:

> El imputado sostiene que la evidencia con que cuenta el ministerio público para sostener las acusaciones ... en [su] contra ... debe suprimirse, puesto que se obtuvo como parte de un allanamiento sin orden, e irrazonable por parte de los funcionarios del orden público que intervinieron en este caso.
>
> Para analizar esta alegación del acusado, es necesario hacer una relación suscinta de los hechos, para resolver si la intervención policíaca fue contraria a derecho.
>
> El [Sr. Tomás] Ramos Librán visitó el Negociado de Vehículos Hurtados, para solicitar una investigación contra el Sr. Mid[d]ton Rodríguez. Alegó el señor Ramos [Librán] que [ellos] habían permutado sus vehículos, pero que el señor Rodríguez no había continuado pagando al Banco el carro adquirido. El señor Rodríguez alegó que había vendido el auto[móvil] a R & G

---

(¹) Apropiarse ilegalmente, sin violencia ni intimidación, de un vehículo de motor perteneciente a otra persona.

(²) Operar un negocio de traficante de vehículos de motor y arrastre sin licencia.

(³) Apropiación ilegal agravada y posesión y traspaso de documentos falsificados.

Auto Brokers[4] y que el acusado le expidió un cheque sin fondos por seiscientos dólares ($600.00).[5]

Así las cosas, el agente [Luis] Díaz Carrillo[6] visitó el negocio del acusado con el [señor] Midton Rodríguez y un representante del Banco. El agente le solicitó al acusado su permiso de traficante de vehículos y éste le mostró un permiso de ARPE y una patente municipal. No tenía el permiso de traficante exigido por la sección 436(a) del Título 9, expedido por el [Departamento de Transportación y Obras Públicas]. El agente indicó al imputado que estaba violando la Ley 104 y procedió a darle las advertencias. El policía le pidió examinar todos los expedientes de los vehículos del negocio y fotografió las oficinas. Se preparó un acta[7] y el agente se incautó de los expedientes y luego del [automóvil] vendido por el [señor] Midton Rodríguez. El testimonio [del] acusado establece que firmó el acta consintiendo al registro, por la coacción del agente y el temor a que éste se incautara de todos los vehículos.

## Bajo esos hechos, el Tribunal Superior resolvió:

El agente tenía motivos fundados para creer que el acusado había cometido un delito en su presencia[:] operar el negocio sin el debido permiso. Podía proceder al arresto, según lo establece la Regla 11 de las de Procedimiento Criminal. Además, el agente ya tenía motivos fundados para creer que el imputado había cometido un delito grave anteriormente, puesto que había expedido un cheque sin fondos para comprar el vehículo del [señor] Midton Rodríguez, apropiándose ilegalmente del mismo, violando así [el Art. 18(2) de la Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec.] 3217(2)[:] Ley de Propiedad Vehicular.

Sin embargo, a[u]n cuando las circunstancias permitían el arresto, no son razonables para efectuar el registro de los expedientes de los vehículos, puesto que no eran las circunstancias especiales a que alude el caso de *Pueblo* v. *Malavé González* [120 D.P.R. 470, 478 (1988): registro incidental a un arresto válido]. El registro e incautación de los expedientes fue irrazonable; el agente debió obtener la orden judicial.

---

[4] Este negocio pertenece al Sr. Reynolds Román.

[5] De la prueba presentada surge que el cheque fue expedido por la cantidad de doscientos cincuenta dólares ($250).

[6] El agente es Sargento de la Policía.

[7] En ésta se hizo constar que el Sr. Reynolds Román le entregaba voluntariamente los expedientes al agente y que le permitía tomar fotos del lugar.

En cuanto al consentimiento al registro prestado por el acusado, éste estuvo viciado. La prueba sobre la renuncia ha de ser clara, demostrativa de que no existió coacción verdadera de clase alguna, directa o indirectamente. (*Pueblo* v. *Acevedo Escobar*, 112 D.P.R. 770, 776 (1982). La prueba demostró que el acusado consintió al registro ante el temor de que fuesen confiscados todos sus vehículos, por lo tanto, tampoco se activa esta excepción a los hechos ante nuestra consideración.

Así las cosas, el tribunal declaró con lugar la moción de desestimación y, en parte, la moción de supresión de evidencia.([8])

Inconforme con la decisión, recurre el Procurador General mediante un recurso de *certiorari* para impugnar la parte de la resolución que declaró con lugar la moción de supresión de evidencia.([9]) Señala los siguientes errores:

A. Incurrió en error el Honorable Tribunal de instancia al darle curso a una moción de supresión de evidencia del imputado, basada en que éste habría entregado a la policía unos expedientes en contra de su voluntad por razón de sentirse coaccionado. La prueba desfilada sobre este extremo, sin embargo, no sólo no reveló el más mínimo indicio de coacción o coerción de parte del Estado, sino que además arrojó un documento firmado por el propio imputado donde éste da fe de haber entregado voluntariamente los expedientes en cuestión.

B. Incurrió en error el Honorable Tribunal de instancia al resolver que el registro de los referidos expedientes fue irrazonable, porque supuestamente no estaban presentes las circunstancias que pudiesen sancionar un registro incidental a un arresto.

El 12 de agosto de 1992, le ordenamos a la parte recurrida que mostrara causa por la cual no deberíamos expedir el auto solicitado y revocar la resolución emitida por el tribunal de instancia. El acusado recurrido ha comparecido. Procedemos a resolver.

---

([8]) El tribunal mantuvo la admisibilidad del vehículo confiscado.

([9]) El Pueblo acató la parte de la resolución que desestimó los catorce (14) cargos imputados para convertirlos en uno (1) solo.

# I

Es norma reiterada por este Tribunal que todo registro y allanamiento que se realice sin existir una orden se presume irrazonable y, por ende, inválido. *Pueblo v. Malavé González*, 120 D.P.R. 470, 476 (1988); *Pueblo v. Lebrón*, 108 D.P.R. 324, 329 (1979). Por tal razón, le corresponde al Ministerio Público presentar prueba para destruir dicha presunción. *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170, 174 (1986); *Pueblo v. Velazco Bracero*, 128 D.P.R. 180 (1991). Esto es así porque, conforme a la Regla 14 de Evidencia, 32 L.P.R.A. Ap. IV, la parte contra la cual se establece una presunción viene obligada a ofrecer evidencia para refutar el hecho presumido, so pena de que el juzgador acepte la existencia del mismo. *Pueblo v. Vázquez Méndez*, supra, pág. 176. Tanto en la jurisprudencia federal como en la de Puerto Rico se han reconocido ciertas excepciones bajo las cuales resultan constitucionalmente válidos los registros, allanamientos e incautaciones sin orden judicial. El Ministerio Público puede rebatir la presunción de ilegabilidad de un registro o allanamiento presentando prueba sobre las circunstancias especiales que le permitieron actuar sin orden. *Pueblo v. Ramos Santos*, 132 D.P.R. 363 (1992); *Pueblo v. Vázquez Méndez*, supra, págs. 176–177.

Una vez el Ministerio Público ha presentado prueba de las circunstancias especiales mediante las cuales llevó a cabo un registro o allanamiento sin orden, convirtiendo dicha intervención en legal y razonable, le corresponde al perjudicado presentar prueba de que no existieron tales circunstancias. Una de las circunstancias especiales o excepción a la norma constitucional de que todo registro, incautación y allanamiento debe realizarse con una orden judicial, lo constituye el registro realizado a base de un consentimiento válido. *Schneckloth v. Bustamante* 412 U.S. 218 (1973); *Chambers v. Maroney*, 399 U.S. 42 (1970); *Katz v. United States*, 389 U.S. 347 (1967); *Pueblo v. Ra-*

*mos Santos*, supra; *Pueblo v. Ramírez Lebrón*, 123 D.P.R. 391 (1989). Si una persona accede a un registro, contra el cual está protegido constitucionalmente, renuncia a la protección y queda así validada la actuación gubernamental. El efecto concreto que esto tiene es que no progresaría una moción de supresión de evidencia con relación a una incautación producto de un registro consentido. E.L. Chiesa, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1991, Vol. I, Sec. 6.15A, pág. 424. Por tal razón, en un procedimiento de supresión de evidencia, una vez el acusado establece el hecho de que la evidencia objetada fue ocupada sin orden judicial previa de registro o allanamiento, le corresponde al Ministerio Público demostrar que el registro y la incautación fue una intervención legal y razonable de los agentes del Estado ya que medió el consentimiento del perjudicado. Tiene que presentar prueba de las circunstancias en las cuales se prestó el consentimiento. Establecido lo anterior, el peso de la prueba recae sobre el promovente de la moción de supresión de evidencia. *Pueblo v. Vázquez Méndez*, supra. Es decir, el acusado tiene que presentar prueba de las circunstancias por las cuales alega que el consentimiento estuvo viciado. No basta con hacer una alegación general de que hubo uno de los vicios del consentimiento.

En Puerto Rico, la doctrina sobre los registros consentidos, según expuesta en *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770 (1982), establece que la renuncia a la protección constitucional ha de hacerse por el titular de ésta, de forma expresa o implícita pero voluntaria. Íd., pág. 777. Cuando el Estado pretende sostener la razonabilidad de un registro, porque medió consentimiento, deberá probar que dicho consentimiento se obtuvo libre y voluntariamente.

Ahora bien, la determinación de si un registro es o no razonable depende de los hechos y las circunstancias específicas de cada caso; de "la atmósfera total". *Pueblo v. Acevedo Escobar*, supra; *Pueblo v. Costoso Caballero*, 100

D.P.R. 147 (1971); *Pueblo v. Riscard*, 95 D.P.R. 405 (1967); *Pueblo v. De Jesús Robles*, 92 D.P.R. 345 (1965).

En *Pueblo v. Malavé González*, supra, págs. 473–474, al abordar la garantía contra registros y allanamientos, resaltamos lo siguiente:

> En este género de casos, como en tantos otros, hay colisión de intereses y nuestra tarea es luchar por hallar los modos de propiciar la armonía entre ellos. De un lado tenemos el interés histórico en proteger al ciudadano de los desmanes que provocaron en primer término el establecimiento de la garantía. Del otro, se halla el interés en proteger a la sociedad de los estragos del crimen. Consideramos que el método más deseable de lograr el equilibrio necesario no consiste en la formulación de reglas mecánicas, excesivamente abarcadoras. Debemos distinguir entre categorías de situaciones, adentrarnos en la atmósfera total de cada caso para hallar el significado preciso, dentro de unas circunstancias específicas, de un concepto tan elusivo y volátil como es el de la razonabilidad. Nuestra tarea es conciliar los intereses en pugna y no permitir que uno pulverice al otro.

Esto es lo que persigue la doctrina al exigir un análisis objetivo de la totalidad de las circunstancias que preceden a un registro. Recuérdese que, aunque en Puerto Rico, el consentimiento prestado en un registro sin orden se determinará mediante un examen de si éste fue voluntario y si hubo ausencia de coacción, ya sea física o psicológica, dicha determinación tiene que hacerse mediante un análisis minucioso de la totalidad de las circunstancias. En *Pueblo v. Acevedo Escobar*, supra, aludimos a tres (3) factores para determinar sobre si medió o no una renuncia al derecho constitucional ante un registro sin orden previa. Estos son: (1) si ha habido fuerza o violencia; (2) si el registro se realizó después de un arresto, y (3) si se encontraban otras personas presentes. Sin embargo, señalamos que éstos son solo algunos de los factores determinantes Íd., pág. 777; *Pueblo v. Narváez Cruz*, 121 D.P.R. 429, 444, (1988).

En la jurisdicción federal, la norma del consentimiento ha sido interpretada subsiguientemente para incluir una

serie de factores adicionales para determinar la voluntariedad del consentimiento.

En *U.S. v. Chaidez*, 906 F.2d 377, 381 (8vo Cir. 1990), se resumen de la manera siguiente:

> Las siguientes características de la persona que ha dado el consentimiento son relevantes al momento de valorar la voluntariedad del consentimiento prestado: (1) su edad ... (2) su inteligencia promedio y su educación ... (3) si la persona estaba intoxicada o bajo la influencia de drogas, al momento del consentimiento ... (4) si la persona consintió luego de ser informada de su derecho de rehusarse a consentir o habérsele dado las advertencias ... y (5) si había sido arrestado anteriormente y, por lo tanto, tenía conocimiento de las protecciones que provee el sistema legal a los sospechosos de un delito ....
>
> Al examinar el ambiente en el cual se prestó el consentimiento, los tribunales deben examinar si la persona que consintió: (1) estaba detenida o fue interrogada por un período largo o corto de tiempo ... (2) fue amenazada, intimidada físicamente, o maltratada por la policía ... (3) si descansó en promesas o falsas representaciones realizadas por la policía ... (4) si estaba bajo custodia o arrestado cuando dio el consentimiento ... (5) estaba en un lugar público o aislado ... o (6) se rehusó al registro o se mantuvo en silencio mientras éste se realizaba .... (Traducción nuestra.)

Tomando en consideración el transfondo jurídico antes mencionado, pasemos a analizar los hechos de este caso.

## II

En el caso ante nuestra consideración, el Tribunal Superior erró al resolver que el consentimiento del imputado a entregar unos documentos que obraban en su poder estuvo viciado por responder a coacción.

En primer lugar, de la prueba presentada surge un documento firmado por el imputado donde éste señala que entregó los documentos *voluntariamente*.

En segundo lugar, de la prueba presentada no surge una posible coacción de tal magnitud que viciara el consentimiento del imputado. No surge que haya sido una coac-

ción amparada en la fuerza o la violencia. La única alusión escueta de la supuesta coacción es que el acusado consintió al registro ante el temor de que fuesen confiscados todos sus vehículos. No surge que el agente le amenazara con confiscarle los vehículos o si sencillamente le informó que le podían ser confiscados los automóviles. Anunció que, de hecho, es correcto, ya que la Policía puede confiscar una propiedad utilizada en relación con la comisión de delitos relacionados con la Ley de vehículos y Tránsito de Puerto Rico. Art. 2 de la Ley Núm. 93 de 13 de julio de 1988, según enmendada, Ley Uniforme de Confiscaciones, 34 L.P.R.A. sec. 1723. Relacionado con esto mismo, consideramos que no puede razonable ni legítimamente concebirse que el imputado se sintiera coaccionado, cuando la prueba demostró que él mismo admitió que no poseía la licencia para traficar con vehículos de motor según lo requiere la ley. A base de esta actividad, en abierta contravención a la ley, la Policía tenía la facultad de incautarse de los vehículos que poseía el acusado, y cualquier manifestación del agente en ese sentido no era, per se, coercitiva.

Al analizar los hechos de este caso, a la luz de los factores expuestos en *Pueblo v. Acevedo Escobar*, supra, encontramos que el ambiente imperante no fue coaccionante o intimidante y que, por consiguiente, el consentimiento fue libre y voluntario. No surge de la prueba que mediara violencia o intimidación por parte del agente de la Policía.

El imputado tampoco estaba bajo arresto ni hay indicios de que su libertad estuviera restringida. *Pueblo v. Pacheco Baéz*, 130 D.P.R. 664 (1992). Tampoco estuvo sujeto a un interrogatorio bajo custodia. *Pueblo v. López Guzmán*, 131 D.P.R. 867 (1992). Éste se encontraba en su negocio ante la presencia de un solo agente de la Policía y de un representante del Banco.

De otro lado, siguiendo los criterios resumidos en *U.S. v. Chaidez*, supra, referentes a las características de la persona que presta el consentimiento, encontramos que el Sr.

Reynolds Román es una persona adulta, de inteligencia y educación promedio, quien se dedica al negocio de venta de automóviles. Por lo tanto, éste debía conocer los requisitos que establece la Ley de Vehículos de Motor y del Tránsito para llevar a cabo este tipo de negocio.([10]) No era un desconocedor o un inexperto en esos asuntos. Estaba en perfecto estado de consciencia. El agente le impartió las advertencias *Miranda* tan pronto como el acusado le informó que no poseía la licencia de traficante de vehículos de motor.

En cuanto al ambiente imperante al momento de prestar el consentimiento, surge de las determinaciones de hechos realizadas por el tribunal de instancia que el acusado no estaba detenido, arrestado o bajo custodia, ni sujeto a un interrogatorio por parte del agente. No se alegó ni presentó evidencia de violencia o coacción por parte del agente. Solamente se hace alusión al "temor" de que le confiscaran todos los vehículos. El consentimiento se hizo expresamente en la propiedad del acusado, en donde únicamente estaba presente el agente y un representante del banco. Cabe señalar que varias jurisdicciones en Estados Unidos han sostenido la validez del consentimiento de un acusado para que se lleve a cabo un registro cuando éste ha sido precedido por declaraciones incriminatorias([11]) o cuando el acusado cooperó con los oficiales o los ayudó a realizar el registro.([12])

---

([10]) El Procurador General señala en su alegato que el acusado adujo que no le hacía falta para operar su negocio la licencia requerida por la Ley Núm. 104 de 15 de julio de 1988 (9 L.P.R.A. sec. 436(a), (e) y (f)) porque él no traficaba con vehículos. Arguyó que entendía por "traficar", el importar y vender carros nuevos y no así el hacer transacciones comerciales en vehículos de motor previamente vendidos y financiados. El acusado señaló en su memorial de derecho presentado en el tribunal de instancia que entendía que para ser un intermediario (*broker*) no se requiere la licencia para operar un negocio de venta.

([11]) *Rhodes v. State*, 120 S.W.2d 1070 (1938); *People v. Davis*, 309 P.2d 1 (Cal. 1957); *Stratton v. Commonwealth*, 263 S.W.2d 99 (Ky. 1953); *Anderson v. State*, 205 A.2d 281 (1964); *People v. Guyette*, 41 Cal.Rptr. 875 (1964); *State v. Bindhammer*, 209 A.2d 124 (1965).

([12]) *United States v. Berryman*, 717 F.2d 650 (1er Cir. 1983); *United States v. Moeller*, 644 F.2d 518 (5to Cir. 1981); *United States v. Valencia*, 645 F.2d 1158 (2do Cir. 1980); *United States v. Wiener*, 534 F.2d 15 (2do Cir. 1976); *United States v.*

A la luz de un análisis objetivo de la totalidad de las circunstancias que precedieron el registro, *Pueblo v. Pacheco Báez*, supra, y *Pueblo v. Tribunal Superior*, 98 D.P.R. 675 (1970), resolvemos que el consentimiento prestado fue expreso, libre e inteligente y, por lo tanto, voluntario.

Por todo lo antes expuesto, *se dicta sentencia revocando la resolución emitida por el Tribunal Superior, Sala de San Juan.*([13])

Así lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López concurrió sin opinión escrita. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Hernández Denton, a la cual se une el Juez Presidente Señor Andréu García.

Disentimos de la sentencia emitida por este Tribunal por entender que el registro sin orden efectuado en el negocio del acusado fue irrazonable. Un análisis de los incidentes del caso a la luz de la normativa constitucional aplicable nos ha convencido de que el consentimiento estuvo viciado y que no se dieron los elementos necesarios para efectuar un registro incidental a un arresto.

---

*Ruyle*, 524 F.2d 1133 (6to Cir. 1975); *United States v. Filipponio*, 561 F. Supp. 750 (N.D. Ill.1983); *United States v. Luc-Thirion*, 501 F. Supp. 875 (E.D. N.Y. 1980); *United States v. Miller*, 442 F. Supp. 742 (D. Maine 1977); *Application of Santos*, 400 F. Supp. 784 (M.D. Pa. 1975).

([13]) La decisión a que llegamos hace innecesario expresarnos sobre el segundo error señalado.

La determinación de si el consentimiento para un registro o incautación fue o no voluntario es una cuestión de hecho que ha de ser resuelta por el foro de instancia. En el caso de autos, el Tribunal Superior (Hon. Hiram Torres Rigual, Juez) evaluó la prueba presentada y concluyó que el Ministerio Público no presentó suficiente evidencia para rebatir la presunción de irrazonabilidad e ilegalidad que engendra un registro e incautación sin orden. Por ende, ordenó la supresión de la evidencia. Coincidimos con su dictamen y lo confirmaríamos.

I

Tomás Ramos Librán solicitó del Negociado de Vehículos Hurtados una investigación contra Midton Rodríguez. Alegó que Rodríguez y él permutaron sus vehículos y que éste dejó de hacer los pagos correspondientes al banco por dicho vehículo. Por su parte, Rodríguez le informó al investigador que él había vendido el auto en cuestión a R & G Auto Brokers y que el dueño de la empresa, Eduardo Reynolds Román, le expidió un cheque sin fondos por seiscientos dólares ($600).

El agente Díaz Carrillo visitó R & G Auto Brokers y descubrió que Reynolds Román estaba operando su negocio sin la licencia de traficante de vehículos de motor y arrastre, en violación de la Ley Núm. 141 de 20 de julio de 1960, según enmendada por la Ley Núm. 104 de 15 de julio de 1988 (9 L.P.R.A. sec. 436(e)). A raíz de este descubrimiento, el agente le leyó las advertencias de rigor y solicitó permiso para examinar todos los expedientes de los vehículos vendidos por R & G Auto Brokers. Una vez obtuvo la autorización solicitada, el agente examinó los expedientes y, al encontrar otras violaciones de la ley, procedió a incautarse del vehículo comprado por R & G Auto Brokers y de todos los expedientes inspeccionados.

Como resultado de esta investigación, el Ministerio Pú-

blico presentó veintiuna (21) acusaciones contra Reynolds Román por violaciones al Art. 18 de la Ley Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. 3217) y a la Ley Núm. 104, *supra*. Oportunamente, Reynolds Román sometió ante el Tribunal Superior una moción para solicitar la desestimación de la acusación y una moción de supresión de evidencia.

El Tribunal Superior declaró con lugar la moción de desestimación por considerar que los catorce (14) cargos imputados constituían un delito continuo y, por lo tanto, debían convertirse en uno (1) solo. En cuanto a la moción de supresión de evidencia, ésta fue declarada con lugar porque el tribunal determinó que el registro sin orden fue ilegal. En su resolución, el Tribunal Superior concluyó que "[e]l testimonio del acusado establece que firmó el acta consintiendo al registro, por la coacción del agente y el temor a que éste se incautara de todos los vehículos". Apéndice, pág. 15. En su dictamen el Tribunal Superior resolvió que en el caso de autos no existieron las circunstancias especiales que permiten el registro de los expedientes de los vehículos y que el agente debió obtener una orden judicial.

El Procurador General recurre ante nos mediante recurso de *certiorari* para impugnar la supresión de la evidencia. En su escrito sostiene que la prueba desfilada revela que no hubo "el más mínimo indicio de coacción o coerción de parte del Estado, sino que además arrojó un documento firmado por el propio imputado donde éste da fe de haber entregado voluntariamente los expedientes en cuestión". Petición de *certiorari*, pág. 4.

## II

La Sec. 10 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, protege al ciudadano contra los registros y allanamientos irrazonables. Todo registro sin orden se presume irrazonable y, por ende, ilegal. Le corres-

ponde al Ministerio Público rebatir la presunción de ilegalidad, presentando prueba sobre las circunstancias especiales que justificaron la intervención sin una orden judicial. Existen varias circunstancias especiales o excepcionales a la norma constitucional de que todo registro, incautación y allanamiento debe realizarse con una orden judicial.

En su recurso el Procurador General sostiene que en el caso de autos las excepciones que son aplicables son el consentimiento al registro y el registro incidental al arresto válido.

La sentencia emitida por este Tribunal correctamente expone la normativa en Puerto Rico sobre los registros consentidos y establece que "la renuncia a la protección constitucional ha de hacerse por el titular de ésta, de forma expresa o implícita pero voluntaria". Sentencia, pág. 806. Entendemos, además, que para constituir un consentimiento voluntario, éste tiene que ser informado y libre de toda coacción, intimidación o coerción ejercida por los agentes del orden público. Véase la opinión disidente del Juez Asociado Señor Hernández Denton en *Pueblo en interés menor N.O.R.*, 136 D.P.R. 949 (1994).

Para determinar si se consintió al registro es necesario examinar si hubo coacción, física o psicológica, a la luz del estado subjetivo vulnerable de quien la presta. Dicha determinación tiene que hacerse mediante un análisis detallado de la totalidad de las circunstancias. La prueba sobre la renuncia ha de ser clara, demostrativa de que no existió coacción verdadera de clase alguna, directa o indirectamente. *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 776 (1982). De ordinario, la decisión de si el consentimiento fue voluntario es una cuestión de hecho que le compete al foro de instancia. *Schneckloth v. Bustamante*, 412 U.S. 218 (1973).

Por otro lado, la doctrina sobre el registro incidental a un arresto válido establece que es permisible un registro

sin una orden de allanamiento efectuado en la persona del arrestado y del área que está a su alcance inmediato con el propósito de ocupar las armas que puedan ser utilizadas por la persona arrestada para agredir a los agentes del orden público o para intentar una fuga, o para ocupar evidencia que de otro modo el arrestado podría destruir. *Pueblo v. Costoso Caballero*, 100 D.P.R. 147 (1971); *Pueblo v. Malavé González*, 120 D.P.R. 470, 477 (1988).

## III

En el caso de autos el Tribunal Superior examinó minuciosamente las circunstancias del arresto de Reynolds Román a la luz de su testimonio en corte y determinó que no se activaron ninguna de las excepciones a la normativa constitucional que presume la invalidez de un registro sin una orden. En particular, el foro de instancia concluyó que las circunstancias en que se efectuó el arresto no justificaban el registro e incautación de los expedientes de los vehículos.

Su decisión está adecuadamente fundamentada. En ningún momento estuvo en peligro la vida del agente investigador ni tampoco se demostró que había que incautarse de los expedientes para evitar que fuesen destruidos. Como los expedientes no estaban en el área inmediata de Reynolds Román, no podían ser destruidos por éste. Tampoco constituían un arma que podía ser utilizada por el acusado para agredir al agente o para intentar la fuga.

En cuanto al consentimiento al registro, el Tribunal Superior determinó que éste estuvo viciado porque "[e]l acusado consintió al registro ante el temor de que fuesen confiscados todos sus vehículos". Apéndice, pág. 14. El foro de instancia oyó a todos los testigos y se convenció de que Reynolds Román psicológicamente había sido coaccionado por el agente. Considerando que el Tribunal Superior escuchó a los testigos, incluso al acusado, y tomó una determi-

nación después de dirimir la credibilidad, confirmaríamos su dictamen. El Tribunal Superior adjudicó credibilidad y esta Curia no debe intervenir con dicha determinación, ya que no se nos ha demostrado que existe error grave o manifiesto, prejuicio, pasión o parcialidad. Recordemos el principio reiterado de que los tribunales de instancia se encuentran en mejor posición de apreciar y aquilatar la prueba presentada y que su apreciación merece gran deferencia por el tribunal apelativo. *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991).

Por estar de acuerdo con el análisis de los hechos y la interpretación del derecho del Tribunal Superior, confirmaríamos su resolución. La prueba presentada por el Ministerio Fiscal no fue suficiente para rebatir la presunción de ilegalidad del registro llevado a cabo sin una orden. El derecho a la intimidad del ser humano es muy preciado y es nuestra obligación proteger a las personas contra los registros e incautaciones irrazonables por parte de los agentes del orden público. Disentimos.