# 2007 DTA 77

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

LUIS DÍAZ ROJAS, RAÚL RODRÍGUEZ RIVERA
Recurridos

Núm. KLCE-2007-00548

San Juan, Puerto Rico, a 30 de mayo de 2007

Panel integrado por su Presidente, el Juez Rivera Martínez,
el Juez Colón Birriel y la Juez Jiménez Velázquez

Colón Birriel, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

El Pueblo de Puerto Rico, representado por el Procurador General (en adelante, el *"Procurador General"*), solicita mediante su **Petición de** *Certiorari* presentada el 17 de abril de 2007, que revoquemos una resolución, recogida en minuta, emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 7 de marzo de 2007, Hon. Miguel J. Fabre Ramírez, Juez, en el caso *El Pueblo de Puerto Rico v. Luis Díaz Rojas y Raúl Rodríguez Rivera,* Crims. Núms. DVI2006G0096 y 0097; DLA2006G0745 al 0748, y DSC206G1284 al 1287, por

infracciones al Artículo 106 del Nuevo Código Penal, en grado de tentativa; Artículo 5.04, 6.01 de la Ley de Armas y Artículo 404 de la Ley de Sustancias Controladas, respectivamente. Mediante el dictamen, transcrito el 16 de marzo de 2007, instancia declaró **Ha Lugar** una *Moción de Supresión de Evidencia* presentada por Luis Díaz Rojas y Raúl Rodríguez Rivera (los *"recurridos"*), fundamentada en que la evidencia que se propone el Estado presentar en el juicio en su contra, fue obtenida mediante una intervención, un registro y un arresto ilegal.

Atendido el recurso, el 26 de abril de 2007, concedimos quince (15) días a los recurridos, para mostrar causa por la cual la resolución recurrida, no debía ser revocada. Posteriormente, el 27 de abril de 2007, el Procurador General solicitó la paralización de los procedimientos pautados para el 31 de mayo de 2007.

El 11 de mayo de 2007, compareció el recurrido, Raúl Rodríguez Rivera, representado por la Sociedad Para Asistencia Legal, mostrando causa según ordenado en nuestra *Resolución* de 26 de abril. Por su parte, el 15 de mayo de 2007, el recurrido Luis Díaz Rojas, representado por el licenciado Ángel 1. Vázquez Cintrón, hizo lo propio.

Resolvemos con el beneficio de los escritos, el derecho y la jurisprudencia aplicable.

## II

Por hechos, alegadamente ocurridos el 23 de enero de 2006, a eso de las 12:00 a.m., en la carretera 830, en la Urbanización Villas de Santa Olaya del Municipio de Bayamón, el Ministerio Público, en representación del Pueblo de Puerto Rico, presentó varias denuncias contra los recurridos, imputándoles, en concierto y común acuerdo, violación al Artículo 6.01 y 5.04 de la Ley de Armas, a saber, portación de municiones y portar y conducir un arma de fuego cargada; infracción al Artículo 404 de la Ley de Sustancias Controladas, poseer la sustancia controlada conocida como marihuana. En esa ocasión, 23 de enero, se determinó causa probable para arresto contra los recurridos por los delitos imputados, imponiéndoseles la correspondiente fianza y señalándose la vista preliminar para el 1 de febrero de 2006.

Posteriormente, el 17 de mayo de 2006, el Ministerio Público presentó otra denuncia contra los recurridos por *"tentativa al Artículo 106 del Código Penal de 2004"*, hechos alegadamente ocurridos el 22 de enero de 2006, a las 11:00 p.m. en el Barrio Juan Sánchez frente al Departamento de Transportación y Obras Públicas del Municipio de Bayamón. Se les imputó, que actuando en concierto y común acuerdo realizaron actos inequívocos dirigidos a ocasionarle la muerte al ser humano, Víctor M. Rivera Torres, consistente en que utilizando un arma de fuego mortífera le hicieron un disparo en la frente, resultando éste, con incapacidad permanente y parálisis en la mitad de su cuerpo, sin que se consumara su muerte por circunstancias ajenas a la voluntad de los recurridos. En esa ocasión, se determinó causa probable para arresto por el delito imputado, fijándoseles la correspondiente fianza y señalándose la vista preliminar para el 24 de mayo de 2006. Esta denuncia fue consolidada con las presentadas previamente el 23 de enero de 2006.

El 31 de de agosto de 2006, el Ministerio Público solicitó enmendar la denuncia por infracción al Artículo 5.04 de la Ley de Armas, para imputar que el arma en cuestión, fue utilizada en la comisión del delito de tentativa de asesinato contra el ser humano Víctor M. Rivera Torres. Solicitó incluir, como testigos, en las denuncias por Artículo 5.04 y 6.01 de la Ley de Armas a una agente de homicidios, al perjudicado, señor Rivera Torres, a un perito balístico, y al doctor de la Sala de Emergencia del Centro Médico. Requirió, además, incluir como testigo al químico en el caso de sustancias controladas y a dos agentes de la policía en el caso de tentativa de asesinato.

La vista preliminar fue celebrada el 26 de septiembre de 2006, determinándose causa probable para acusar por todos los delitos imputados. Las acusaciones fueron presentadas el 6 de octubre, celebrándose posteriormente el acto de lectura.

Así las cosas, el 7 de noviembre de 2006, los recurridos presentaron escrito titulado *Moción de Supresión de Evidencia* y *Moción de Supresión de Identificación*. Expresaron, en esencia, que el agente que intervino en el caso carecía de motivos fundados para creer que se estuviera cometiendo un delito en su presencia, su testimonio fue esteriotipado y carente de toda credibilidad. En su solicitud de supresión de identificación, solicitaron que la identificación que hiciera el perjudicado Rivera Torres fuera suprimida, por no gozar de los criterios de confiabilidad, fue contraria a derecho y a los criterios jurisprudenciales. En cuanto a esta solicitud, conforme expresara el Procurador General, instancia determinó que era un asunto para ser dilucidado en el acto del juicio.

La vista de supresión de evidencia se celebró el 7 de marzo de 2007. El recurrido, Luis Díaz Rojas, fue representado por el licenciado Ángel Vázquez Cintrón, mientras que el licenciado Alejandro Sanfeliú Vera, de la Sociedad Para Asistencia Legal, representó al recurrido, Raúl Rodríguez Rivera. Como hemos informado, en esa ocasión, el Magistrado que entendió en la vista, declaró **Ha Lugar**; la supresión de evidencia, ordenando suprimir la evidencia ocupada, así como cualquier testimonio relacionado con la ocupación.

Surge del testimonio prestado en la vista de supresión de evidencia por el agente Alberto L. Santos Cruz, que labora en el cuartel de Dajaos en el Municipio de Bayamón. El 22 de enero de 2006, aproximadamente a las 11:00 p.m., se encontraba junto a un compañero en un patrullaje preventivo por la carretera 174, cuando recibió por el radio de su patrulla un mensaje referente a una Mitsubishi tornasol verde, con dos ocupantes, la que se alegaba estaba involucrada en un caso de tentativa de asesinato. Por la carretera 174, no había pasado ningún vehículo Mitsubishi Montero y que a esa hora por allí no pasan muchos vehículos. Una hora después de recibido el mensaje, interviene con una Mitsubishi en dirección contraria, con dos individuos en su interior, viraron y le dieron seguimiento al vehículo. Le dio el alto al vehículo con los biombos, el *spot light* y el speaker de su patrulla, procediendo el pasajero a arrojar por la ventana del auto, lo que aparentaba ser un arma de fuego. Se bajan de la patrulla, ponen bajo arresto a los jóvenes, su compañero interviene con el conductor y él con el pasajero. El arma que resultó ser una Smith Wesson, calibre 38, fue ocupada en un área fangosa cerca de la guagua Montero. Dentro de la guagua se ocuparon cuatro (4) balas y en la gaveta del frente del asiento del pasajero una bolsita plástica, transparente con cierre a presión con tonalidad azul, conteniendo picadura de marihuana y dos bolsitas plásticas conteniendo polvo blanco de cocaína.

Durante el interrogatorio al agente Santos Cruz, el Ministerio Público le preguntó, qué le hizo pensar que el auto en que transitaban los jóvenes era el mismo descrito por radio. Contestó que era la primera Mitsubishi que pasó por el lugar una hora después de recibido el mensaje. El Magistrado que presidió la vista, preguntó al agente, cuál era el color de la Montero, contestando, verde tornasol. El Magistrado cuestionó, si era verde o tornasol. El agente contestó que era tornasol color verde. El Magistrado replicó que verde era verde y tornasol, tornasol. Finalmente, el agente contestó que la Montero era verde tornasol.

El Ministerio Público le preguntó al agente porqué dijo que el vehículo era verde tornasol, contestando, que con los reflejos del biombo, ese color cambiaba y aparentaba ser verde. A preguntas del Magistrado, el agente contestó que el color que le informaron por radio era tornasol.

En el contrainterrogatorio al agente se le cuestionó sobre el hecho de que en su declaración jurada mencionó que en el mensaje cursado por radio se informaba de una guagua verde, no tornasol verde, como declaró. Se le preguntó si a los jóvenes se les dio el alto por el altavoz, antes o después de alegadamente tirar el arma, e indicó, antes. Declaró que los jóvenes no estaban cometiendo delito alguno, cuando los siguió y le dio el alto; no sabe quién fue el que dio la información a la persona que la transmitió por radio.

Concluido el testimonio del agente Santos Cruz, el Ministerio Público solicitó, antes de entrar con el otro testigo, que se le diera una continuación para el otro día, por entender que era indispensable para la mejor comprensión del asunto, citar a la persona del retén, quien transmitió el mensaje. El tribunal y las partes

expresaron que éste no había sido identificado, ni aparecía como testigo. El tribunal declaró **No Ha Lugar** la solicitud del Ministerio Público, expresando que conforme a lo declarado por el agente Santos Cruz, éste no sabe quién fue la persona que dio la información por radio. Por su parte, el Ministerio Público se ofreció a buscar la información, que surge de los récords del cuartel, solamente con una llamada puede obtener el nombre de esa persona. Por otro lado, el licenciado Vázquez Cintrón expresó, que aunque se trajera a esa persona, el agente Santos Cruz declaró que no podría identificarlo, por no saber quién era.

El tribunal declaró **No Ha Lugar** lo solicitado por el Ministerio Público, expresando: *"el traer ahora una persona totalmente desconocida, que no ha sido identificada de forma alguna con el único testigo, para venir a esta altura de la Vista de Supresión de Evidencia, a indicar que fue la persona que dio la información por radio."*

Luego de otros incidentes, las partes dieron por sometido el asunto, argumentando sus respectivas posiciones. El tribunal, luego de examinar sus notas en torno al testimonio del agente Santos Cruz, manifestó que le daba total credibilidad desde que tomó servicio a las 8:00 de la noche, desde que recibe la llamada que escuchó por radio a las 11:00 y que intervino a las 12:00, una hora después; que siguió al vehículo Montero por 4 ó 5 minutos, que no cometieron delito en su presencia, hasta luego de haber prendido el biombo y *el spot light* a los fines de detenerlos. Concluyó que si no había motivo para intervenir, todo lo demás era suprimible por ser el fruto del árbol ponzoñoso conforme a la jurisprudencia. Finalmente declaró **Ha Lugar** la supresión solicitada.

Inconforme con la determinación, el Procurador General le imputa al Tribunal de Primera Instancia, haber cometido error: a) al abusar de su discreción al no acceder a que el Ministerio Público citara a un testigo para la vista de supresión de evidencia, etapa preliminar al juicio en su fondo; b) al aplicar en una vista de supresión de evidencia el criterio de cualidad de prueba que rige en el juicio plenario donde se dilucida la inocencia o culpabilidad del acusado; y (c) no obstante haberle dado total credibilidad al testimonio del agente Santos Cruz, resolver que éste no tenía motivos fundados para intervenir con los recurridos.

### III

En una vista de supresión de evidencia, no está en controversia la culpabilidad o inocencia de un acusado, lo único a decidirse por el magistrado es la legalidad o razonabilidad del registro efectuado, determinación que es revisable por ambas partes, imputado y Ministerio Público, por vía del recurso de *certiorari*. Una decisión suprimiendo una evidencia en particular, necesariamente no implica el fin del caso; siempre existe la posibilidad de que el Ministerio Público pueda demostrar el día del juicio la culpabilidad del acusado más allá de duda razonable mediante la presentación de evidencia independiente y distinta a la suprimida. *Pueblo v. Rivera Rivera,* 117 D.P.R. 283, 290 (1986).

El Artículo II, Sección 10, de la Carta de Derechos de la Constitución del Estado Libre Asociado, dispone en lo pertinente, que *"[n]o se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. [...] La evidencia obtenida en violación de esta sección será inadmisible en los tribunales."*

Esta disposición es análoga a la Cuarta Enmienda de la Constitución de Estados Unidos y, al igual que su equivalente federal, su objetivo básico es proteger el ámbito de intimidad y dignidad del individuo frente a actuaciones arbitrarias del Estado. En términos prácticos, esta disposición constitucional *"pretende impedir que el Estado interfiera con la intimidad y libertad de las personas excepto en aquellas circunstancias en las que el propio ordenamiento lo permite".* *Pueblo v. Yip Berríos,* 142 D.P.R. 386, 397 (1997).

## A. Alcance de la garantía constitucional

Según reiterado por nuestro Tribunal Supremo, esta disposición constitucional persigue tres objetivos históricos: proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias e interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión del Estado. *E.L.A. v. Coca Cola Bott. Co.,* 115 D.P.R. 197, 207 (1984). Se advierte, sin embargo, que esa protección ampara únicamente las intervenciones irrazonables en las cosas físicas o intangibles sobre los cuales la persona tenga una expectativa real de intimidad, particularmente su cuerpo y su morada. *Pueblo v. Valenzuela Morel,* 158 D.P.R. 526, 539 (2003); *Pueblo v. Camilo Meléndez,* 148 D.P.R. 539, 550 (1999); *Pueblo v. Miranda Alvarado,* 143 D.P.R. 356, 362-363 (1997).

En virtud de lo anterior y de los requerimientos constitucionales, nuestro más alto foro ha reconocido como principio cardinal la necesidad de una orden judicial previa para el registro de una persona o de su propiedad. Por tal razón, en nuestra jurisdicción, todo registro e incautación sin una orden judicial previa se presume inválido. Esto obedece a la política pública de rango prioritario que exige la protección de la integridad, dignidad e intimidad del ser humano, al interponer la figura del juez como garantía de razonabilidad de la intervención del Estado. *Pueblo v. Vázquez Méndez,* 117 D.P.R. 170, 175 (1986); *Pueblo v. Lebrón,* 108 D.P.R. 324, 329 (1979).

Ante toda controversia relacionada con la protección constitucional contra registros y allanamientos irrazonables, lo primero a determinar lo es la existencia o no de un registro. Se entiende que ha ocurrido un registro cuando se infringe la expectativa de intimidad que la sociedad está preparada a reconocer como razonable. La cuestión central es si la persona tiene derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete. *Lebrón,* 108 D.P.R., a la pág. 331, seguido en *Pueblo en Interés del Menor N.O.R.,* 136 D.P.R. 949, 961-962 (1994).

En ciertas circunstancias, si el arresto es válido, procede el registro incidental del sospechoso y del área a su alcance, incluidas su persona y su vestimenta, sin orden judicial previa. Es *"condición indispensable que da origen a la excepción... que se haya practicado un previo arresto válido, ya sea con la orden correspondiente o sin orden en los casos que el arresto se ha encontrado razonable. La razonabilidad constitucional de este registro requiere, además, que el mismo sea incidental en tiempo y lugar al arresto",* pues el mero hecho de que se haya hecho un arresto legal no convalida *ipso facto,* un registro o incautación sin orden. [Citas omitidas.] *Pueblo v. Pacheco Báez,* 130 D.P.R. 664, 670-671 (1992).

## B. La legalidad del arresto

Ahora bien, como ocurre en el caso de autos, es a partir de la detención o arresto que se activa de inmediato la protección constitucional contra los registros y allanamientos irrazonables. *Pacheco Báez,* 130 D.P.R., a la pág. 668; *Pueblo v. Tribunal Superior,* 97 D.P.R. 199, 201 (1969). Es necesario evaluar si en este caso tal intervención inicial se dio dentro del marco de legalidad que contemplan las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. ___.

La Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 11, prescribe las circunstancias en que un funcionario del orden público puede llevar a cabo un arresto válido:

*"(a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario, el funcionario deberá solicitar que se expida una orden de arresto.*

*(b) Cuando la persona arrestada hubiese cometido un delito grave (felony), aunque no en su presencia.*

*(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave (felony), independientemente de que dicho delito se hubiere cometido o no en realidad."*

A su vez, la Regla 12, 34 L.P.R.A. Ap. II, R. 12, autoriza a un ciudadano particular a efectuar un arresto en cualquiera de las siguientes circunstancias:

*"(a) Por un delito cometido o que se hubiere intentado cometer en su presencia. En este caso deberá hacerse el arresto inmediatamente.*

*(b) Cuando en realidad se hubiere cometido un delito grave (felony) y dicha persona tuviere motivos fundados para creer que la persona arrestada lo cometió."*

De estas disposiciones, se desprende que la facultad para arrestar que tiene un ciudadano particular es más limitada que la del funcionario del orden público. Mientras que la Regla 12 requiere que un ciudadano tenga certeza de la comisión del delito o de su tentativa, la Regla 11 autoriza a un funcionario del orden público a hacer un arresto cuando tiene motivos fundados para creer que la persona que va a ser arrestada ha delinquido en su presencia o cuando efectivamente haya incurrido en conducta delictiva, aunque no en presencia del agente. Es decir, *"tales motivos fundados existen claramente cuando el agente del orden público personalmente observa una actuación que es delictiva. También existen tales motivos fundados, aunque el agente no haya presenciado la comisión del delito, si al evaluar todos los datos que éste posee sobre el asunto, incluyendo lo que el agente mismo haya atisbado, éste concluye razonablemente que lo más probable es que se ha cometido o se va a cometer un delito". Pueblo v. Colón Bernier,* 148 D.P.R. 135, 144-144 (1999). Lo importante es que el agente perciba, por observación personal, con sus sentidos, los elementos constitutivos de una conducta punible. No es necesario que el delito se haya cometido, basta con que el agente así lo crea. *Pacheco Báez,* 130 D.P.R., a la pág. 671.

De un lado, se ha dicho que un agente del orden público tiene motivos fundados para arrestar a una persona si tiene conocimiento o información *"que lleva a una persona ordinaria y prudente a creer que la persona a ser arrestada ha cometido un delito público, razón por la cual se hace necesario la evaluación de las circunstancias específicas de cada caso en particular". Pacheco Báez,* 130 D.P.R., a la pág. 671. Es decir, la existencia de *"motivos fundados"* para arrestar se determina a base de criterios de probabilidad y razonabilidad. Sobre este particular, es doctrina sentada que la determinación de si un registro es o no razonable depende de los hechos y circunstancias específicas de cada caso; de *"la atmósfera total"* que rodea el acto interventor. *Pueblo v. Reynolds Román,* 137 D.P.R. 801, 806-807 (1995). Sin embargo, el simple hecho de que se ocupe evidencia delictiva no convalida un arresto ilegal; se requiere algo más previo a la intervención. *Pueblo v. González Rivera,* 100 D.P.R. 651, 655 (1972); *Pueblo v. Martínez Torres,* 120 D.P.R. 496, 503 (1988). Incluso, se ha establecido que el concepto motivos fundados es sinónimo de causa probable para el arresto, que corresponde determinar al agente ante las circunstancias precisas del caso. *Pueblo v. Díaz Díaz,* 106 D.P.R. 348, 353 (1977).

En *Martínez Torres,* 120 D.P.R., a las págs. 504-506 (1988), nuestro Tribunal Supremo expresó:

*"La exigencia de motivos fundados no impide que los agentes del orden público actúen en forma coordinada y concertada en la persecución de un crimen. En Pueblo v. Luzón, 113 D.P.R. 315, 324 (1984, consignamos que "el conocimiento de cada agente ---cuando trabajan cerca y se mantienen informados---, es atribuible a los demás". También dijimos que "[s]e puede establecer la existencia de causa para justificar un arresto sin orden, basado en información policíaca colectiva al momento del mismo, siendo innecesario que el oficial que lleva a cabo el arresto lo haga basándose únicamente en su conocimiento personal de las*

*circunstancias. Basta con que el agente de la Policía que inició la cadena de comunicaciones tenga información de primera mano. (Traducción nuestra)". (Citas omitidas y énfasis suplido.) La labor policíaca se vería entorpecida si los agentes estuvieran impedidos de actuar de acuerdo con instrucciones, órdenes e información que se transmiten de un agente a otro, no sólo de persona a persona, sino a través de cualquier medio de comunicación, especialmente cuando se trata del sistema oficial de radioteléfono. Lo contrario propiciaría la fuga del sospechoso y frustraría la gestión de la Policía. United States v. Robinson, 536 F.2d 1298, 1299 (1976). No debe haber duda de que un policía puede actuar según la información provista por otro miembro de la fuerza y puede, simplemente, presumir la confiabilidad y certeza de lo comunicado. Sin embargo, cuando se cuestiona la validez de esta actuación en el contexto de una supresión de evidencia, es necesario que se presente evidencia para establecer los motivos fundados que tuvo el agente que dio la orden o que originó la cadena de información que tuvo como resultado que se ordenase el arresto. Pueblo v. Luzón, 113 D.P.R. 315, 324 (1984). Sólo así puede el Ministerio Público establecer que la incautación producto del arresto sin orden judicial fue efectuada conforme a derecho. Pueblo v. Vázquez Méndez, 117 D.P.R. 170 (1986)."*

El hecho que un agente pueda actuar según una comunicación de otro policía sin tener motivos fundados, no significa que el Ministerio Público queda relevado de su deber de presentar evidencia para establecer la legalidad del arresto. Esta posición ha sido asumida por tribunales de diversas jurisdicciones. (Citas omitidas). Adoptar la posición contraria conllevaría los resultados siguientes: el Ministerio Público tendría que probar motivos fundados cuando quien efectúa el arresto sin orden judicial es el agente que tiene el conocimiento de los motivos fundados para llevar a cabo el arresto. Sin embargo, si este mismo agente, en vez de efectuar por sí mismo el arresto solicita a través del radioteléfono la ayuda de otro agente, y es este último el que realiza el arresto, el Ministerio Público quedaría relevado de probar los motivos fundados. Los tribunales, por lo tanto, no tendrían la oportunidad de pasar juicio sobre la suficiencia de los motivos fundados para el arresto sin orden judicial. (Citas omitidas.) Según estas circunstancias, la facultad de determinar la procedencia de un arresto sin orden judicial quedaría enteramente al arbitrio de los policías, sin posibilidad de una efectiva intervención judicial para evaluar su corrección. Esta posición es constitucionalmente insostenible; está en claro conflicto con el mandato constitucional.

## C. El peso de la prueba si el registro es sin orden

Una vez el imputado alega que su arresto se realizó sin orden judicial previa, corresponde al Ministerio Público demostrar la legalidad del arresto y la razonabilidad del registro incidental a ese arresto en la vista para adjudicar la moción de supresión de evidencia. Así se ha resuelto reiteradamente. *Pueblo v. Rivera Colón,* 128 D.P.R. 672, 681 (1991); *Martínez Torres,* 120 D.P.R., a la pág. 502; *Vázquez Méndez,* 117 D.P.R., a la pág. 174; *Lebrón,* 108 D.P.R., a la pág. 329.

Es decir, el peso de la prueba recae sobre el Pueblo, pues la ausencia de orden previa, priva el registro de la presunción de validez que le confiere la orden judicial. *Vázquez Méndez,* 117 D.P.R., a la pág. 177; E.L. Chiesa, I *Derecho Procesal Penal de Puerto Rico y Estados Unidos* 333 (Editorial Forum 1999).

Incluso, como hemos expresado, *"cuando se cuestiona la validez de esta actuación en el contexto de una moción de supresión de evidencia, es necesario que se presente evidencia para establecer los motivos fundados que tuvo el agente que dio la orden o que originó la cadena de información que tuvo como resultado que se ordenase el arresto". Martínez Torres,* 120 D.P.R., a las págs. 505-506. Lo importante es que quien inicie la cadena de eventos tuviera información confiable que colocara al agente interventor en posición de actuar lícitamente contra el sospechoso o imputado.

Establecidos los preceptos legales que regulan las controversias que plantea el caso de autos, nos corresponde determinar si el Tribunal de Primera Instancia actuó correctamente al suprimir la evidencia

incautada a los recurridos el día en que fueron arrestados.

En la vista de supresión de evidencia, obtenida mediante un registro sin orden, el Ministerio Público tiene la obligación de establecer la excepción a la regla de invalidez. Le corresponde demostrar la existencia de los motivos fundados a que alude la Regla 11 de Procedimiento Criminal. Los tribunales, al adjudicar una moción de supresión de evidencia, pueden considerar la credibilidad del agente que alega tener motivos fundados, o quien transmite la información a otro agente. La obligación del fiscal es de acreditar cabalmente los motivos fundados de quien transmite la información que finalmente recibe el funcionario que arresta. La admisibilidad en evidencia del material obtenido en un registro incidental a un arresto sin orden judicial que ha descansado en un mensaje transmitido de un agente de la Policía a otro por el sistema oficial de comunicación, dependerá de si el oficial que inicia la cadena de eventos que resulta en el mensaje transmitido a los agentes que efectúan el arresto posee motivos fundados para ordenar el mismo. *Martínez Torres,* 120 D.P.R., a las págs. 505-506.

En el caso de autos, el Ministerio Público presentó como testigo en la vista de supresión de evidencia al agente Santos Cruz, quien actuó a base de una información recibida por el radioteléfono de su auto oficial, indicando sobre un vehículo marca Montero alegadamente involucrado en una tentativa de asesinato. Durante el la vista de supresión, el Ministerio Público le solicitó al tribunal, en dos ocasiones, una continuación de la vista para el día siguiente, para citar a la persona que transmitió la información por el radioteléfono del vehículo en que patrullaba el agente Santos Cruz, es decir, localizar al retén que transmitió la información en torno a la guagua Montero en que iban los ocupantes que se alegaba estar involucrados en un caso de tentativa de asesinato ocurrido recientemente. El Ministerio Público se ofreció a buscar la información de la identidad del retén, información que surgía de los récords del cuartel de la policía, y que era fácil obtener, solamente con una llamada telefónica se podía conocer su nombre. No obstante, el tribunal recurrido expresó que, según el testimonio del agente Santos Cruz, éste no podía identificar a la persona que dio la información por radioteléfono, por lo cual, no había manera de unir el testimonio del retén con el del agente Santos Cruz. Expresó que una persona podía declarar, yo fui el agente que transmití esa información, y eso no podía conectarlo con el testimonio del agente Santos Cruz. Finalmente, no permitió que el Ministerio Público hiciera las gestiones de conseguir el retén.

Somos del criterio que el tribunal recurrido debió darle un tiempo razonable al Ministerio Público para hacer la gestión de conseguir al retén que dio la información por radioteléfono. Independientemente que el agente Santos Cruz lo conociera o no, no era razón para no permitir a dicho funcionario hacer las gestiones encaminadas a conseguirlo. Su testimonio era a los únicos fines de que el día de los hechos el recibió esa información y la transmitió por radioteléfono, sin importar a que persona en particular le fue transmitida. Obsérvese que cuando se cuestiona la validez de una orden de arresto en el contexto de una moción de supresión de evidencia, es necesario que el Ministerio Público presente evidencia suficiente para establecer los motivos fundados que tuvo el agente que dio la orden o que originó la cadena de información que tuvo como resultado que se ordenase el arresto.

En consideración a lo cual, el foro recurrido no hizo buen uso de su discreción al no acceder, en esa etapa de los procedimientos, a que el Ministerio Público cumpliera con su descargo de responsabilidad citando a un testigo para la vista de supresión de evidencia. Al así hacerlo, privó a dicho funcionario de establecer si el oficial que inició la cadena de eventos y que transmitió el mensaje por radio que recibiera el agente Santos Cruz, tenía motivos fundados para ordenar el arresto de los recurridos.

Por otro lado, debemos tener presente que los agentes del orden público, en protección de la ciudadanía en general, tienen el perfecto derecho a patrullar las vías y áreas públicas de nuestro país. *Pueblo v. Ortiz Martínez* 116 DPR 139, 144 (1985). Como colorario de ese derecho, tienen la obligación de investigar toda llamada telefónica recibida o información brindada por dicha ciudadanía referente a posible actividad delictiva.

Aun cuando el Ministerio Público no presentó el testimonio del retén que cursó el mensaje para establecer motivos fundados colectivos y que instancia tuviera la oportunidad de evaluar su suficiencia, lo cierto es que en este caso los agentes del orden público tenían la obligación de investigar la información recibida conforme su facultad investigativa, y como producto de ello se configuró de manera independiente los motivos fundados para la intervención.

Por último, los agentes que recibieron el mensaje radial alertándoles del vehículo envuelto en una tentativa de asesinato, antes de intervenir con éste, observaron cómo del vehículo arrojaron por la ventana lo que aparentaba ser un arma de fuego. Considerado hasta ese momento que los agentes no tenían motivos fundados para intervenir con el vehículo, conforme con nuestro estado actual de derecho, la garantía constitucional contra registros y allanamientos no ampara la incautación de evidencia arrojada o abandonada en la vía pública. *Pueblo v. Ortiz Zayas,* 122 D.P.R. 567, 571 (1988); *Pueblo v. Ortiz Martínez,* 116 D.P.R. 139, 144-145 (1985). La observación de los agentes corroboró la información recibida por radio de que los ocupantes de la Montero eran sospechosos de estar relacionados con el delito mencionado.

En virtud de lo anteriormente expresado, podía el foro recurrido concluir que el Ministerio Público satisfizo el peso probatorio requerido para demostrar que el arresto fue legal y que el registro incidental también lo fue, razón por la cual expedimos el auto solicitado y revocamos la resolución recurrida. Se devuelve el caso al Tribunal de Primera Instancia, Sala de Bayamón, para la continuación de los procedimientos, conforme a lo antes expuesto. En consecuencia, el auxilio de jurisdicción solicitando la paralización del juicio para el 31 de mayo de 2007, se tornó en académico.

Notifíquese inmediatamente por telefax y correo ordinario.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones